RINA JANEY BISHOP v. RONALD LYNN BISHOP

No. 8718DC1140

(Filed 21 June 1988)

**1. Contempt of Court § 1.1— contempt order to enforce child support—distinction between civil and criminal contempt**

In determining whether contempt orders are civil or criminal or both, the "punitive" or "remedial and coercive" purposes of the orders should be drawn from an examination of the character of the actual relief ordered by the court, as classified by applying certain straightforward rules suggested by *Hicks ex rel. Feiock v. Feiock*, 485 U.S. ---.

**2. Contempt of Court §§ 6, 6.3— contempt for failure to pay child support—civil and criminal relief—findings and procedure**

Where both civil and criminal relief are imposed in a contempt order, the court must make all findings necessary to impose both classes of relief; however, the court must in that case afford defendant all procedural and evidentiary standards appropriate to criminal contempt proceedings, and the imposition of probationary or suspended sentences is deemed criminal relief so long as the court does not order the sanctions avoided or purged by specific acts.

**3. Contempt of Court § 1.1— contempt for failure to pay child support—civil in nature**

A contempt order was construed as adjudicating defendant in civil contempt where the court was attempting to coerce defendant's obedience and remedy plaintiff's lost child support; although the court ordered defendant confined in jail for a period of 29 days, it allowed defendant to avoid that punishment altogether by paying the entire arrearage.

**4. Contempt of Court § 6.3— child support arrearage—no finding of ability to pay**

There were inadequate findings to support an adjudication of civil contempt where the court made no findings of defendant's ability to pay the entire child support arrearage, and payment of the entire amount was necessary to avoid punishment.

APPEAL by defendant from *Bencini, Judge*. Order entered 22 June 1987 in District Court of GUILFORD County. Heard in the Court of Appeals 10 June 1988.

*Hatfield and Hatfield, by Kathryn K. Hatfield, for plaintiff-appellee.*

*Neill A. Jennings Jr. for defendant-appellant.*

GREENE, Judge.

Defendant appeals the contempt order arising from his alleged failure to pay plaintiff $350 per month as child support under a 1986 consent judgment. The record reveals that, upon plaintiff's motion, the court ordered defendant to "show cause why he should not be found in willful contempt . . . ." At the June 1987 hearing on that motion, defendant was not represented by counsel and was called as a witness by plaintiff. Defendant testified he had earned approximately $2,000 per month from August 1986 (the date child support commenced) until he became unemployed in October 1986. Defendant remained unemployed until March 1987 when he began working at the rate of $4.25 per hour. The record also contains evidence that defendant made the full $350 per month child support payments under the consent judgment in October 1986, December 1986, and January 1987. Defendant made a significantly smaller payment in September 1986 and only token payments in April and June 1987. Defendant admitted the total arrearage of his child support obligation was $2,230.

Based upon this evidence, the court entered the following written order:

This matter coming on to be heard upon Plaintiff's motion to hold Defendant in contempt for being in arrears $2230 [;]

AND IT APPEARING that since 1-30-87 the Defendant has paid $60 being $30 on 4-10-87 and $30 on 6-11-87, but that he has been employed at $4.25 an hour since 3-9-87; and further that Defendant lives with his girlfriend in a house where the total rent is $150 per month.

AND IT FURTHER APPEARING that the Defendant has had the ability to pay child support & that his failure to do so is willful contempt.

IT IS THEREFORE ORDERED ADJUDGED & DECREED THAT:

(1) Defendant is found in willful contempt of the lawful orders of the court and confined to the Guilford County Jail for 29 days.

(2) Defendant may purge himself from contempt by paying into CSC the sum of $2230 upon payment of which sum he shall be released.

(3) Commencing 6-30-87 & thru 30th of each month thereafter Defendant shall make his child support payment of $350 per month thru the Clerk of Superior Court.

(4) Plaintiff is authorized to complete the paperwork to garnish Defendant's wages for child support.

Defendant appeals what both parties characterize as the court's judgment of *criminal* contempt. Defendant specifically contends (1) that the court erroneously concluded he had the past ability to comply with the child support provisions of the prior consent judgment and (2) that the court made inadequate findings to support its ordering his confinement in jail for 29 days. Defendant also complains the court made no findings that he had the "ability to pay the *arrearages* . . ." (emphasis added). Defendant does not dispute his notice of these proceedings.

---

These facts present the following issues: where defendant challenges the adequacy of the trial court's findings to demonstrate criminal and/or civil contempt, (A) what rules of construction determine whether a contempt order evidences an adjudication of criminal contempt, civil contempt, or both; and (B) once the criminal and/or civil character of relief is determined, whether the trial court made adequate findings and conclusions to justify the particular relief it ordered in response to defendant's alleged contempt.

At the outset, we note that both parties have apparently briefed this appeal on the assumption the court's order states a conviction for criminal contempt under Section 5A-11(a)(3). N.C.G.S. Sec. 5A-11(a)(3) (1986) (willful disobedience of court's lawful order). Defendant's primary objection to finding criminal contempt is that, given his long period of unemployment during 1986 and 1987, the court could not properly find that he had the ability during that period to pay the required child support under the 1986 consent judgment. We note defendant failed to make his full $350 child support payment during the months of March, April, May, and June 1987 — a period *after* he regained employ-

ment and presumably regained the ability to make those monthly payments at the time they were required. *Cf. Lamm v. Lamm*, 229 N.C. 248, 250, 49 S.E. 2d 403, 404 (1948) (necessity for "willful" criminal contempt merely required finding defendant had means to comply with prior alimony order "at any time" after its entry). However, as defendant complains in his brief of his lack of legal counsel during what he characterizes as a criminal contempt proceeding, we also note the court apparently did not inquire whether defendant needed legal representation. *Compare O'Briant v. O'Briant*, 313 N.C. 432, 435, 329 S.E. 2d 370, 373 (1985) (criminal contempt is crime entitling accused to necessary constitutional safeguards) *with Jolly v. Wright*, 300 N.C. 83, 88, 265 S.E. 2d 135, 139 (1980) (rejecting right of civil contemnor to counsel under Section 7A-451(a)(1) since statute only applies in criminal cases). Furthermore, neither the record below nor defendant's brief reflects any awareness that defendant could not be compelled to testify against himself if this were a proceeding for criminal contempt. *Cf.* N.C.G.S. Sec. 5A-15(e) (1986) (alleged contemnor may not be compelled to testify at show cause hearing).

Although clearly challenging this order as one for criminal contempt, defendant also generally assigns error to the court's findings and complains in his brief that the court "makes no finding that [defendant] had the ability to pay the *arrearages* . . . ." (emphasis added). This contention represents an additional challenge to the court's findings to justify an adjudication of *civil* contempt. *Compare* N.C.G.S. Sec. 5A-21(a)(3) (1986) (contemnor must be able to comply with civil contempt order) *with Green v. Green*, 130 N.C. 578, 579, 41 S.E. 784, 786 (1902) (under prior statute, finding present ability to pay part of arrearage did not support jailing contemnor where release conditioned on paying total arrearage) *and Jones v. Jones*, 62 N.C. App. 748, 749, 303 S.E. 2d 582, 584 (1983) (despite trial court's finding current employment income, civil contempt order reversed where no evidence defendant had present ability to pay total $6,540 in arrearages as ordered). Since the instant order allows defendant to purge his contempt by paying the entire $2,230 arrearage, the trial court would under *Green* and *Jones* be required to conclude defendant had the ability in June 1987 to pay the entire $2,230 arrearage in order to hold him in civil contempt.

A

[1, 2]    Thus, in order to determine the adequacy of the court's findings to support its contempt order, we must first determine whether the order evidences an adjudication of defendant's criminal contempt, civil contempt, or both. *Cf.* N.C.G.S. Sec. 5A-12(d) (1986) (court may find civil and criminal contempt based on same conduct). Our Supreme Court summarized the general differences between criminal and civil contempt in *O'Briant*:

> At the outset we note that contempt in this jurisdiction may be of two kinds, civil or criminal, although we have stated that the demarcation between the two may be hazy at best. Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties. A major factor in determining whether contempt is criminal or civil is the *purpose* for which the power is exercised. Where the punishment is to preserve the court's authority and to punish disobedience of its orders, it is criminal contempt. Where the purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil. *The importance in distinguishing criminal and civil contempt lies in the difference in procedure, punishment and right of review.*

313 N.C. at 434, 329 S.E. 2d at 372 (citations omitted) (emphasis added); *see also Jolly*, 300 N.C. at 92, 265 S.E. 2d at 142 (civil contempt is not punishment but is coercion to comply with court order). Of the difference in "procedure, punishment, and right of review" noted in *O'Briant*, we conclude that the "punishment," i.e. the relief ordered by the court, most accurately reveals whether the court's purposes are "punitive" and/or "remedial and coercive" since "the purpose of the [criminal/civil] classification is simply to say that criminal type sentences should not be meted out where criminal type protections are not afforded and that coercive sentences shall not be meted out where there is nothing to coerce." D. Dobbs, *Law of Remedies* Sec. 2.9 at 97 (1973).

Indeed, the United States Supreme Court has recently held with respect to due process review that the remedial or punitive "character of relief" is the dispositive distinction between civil and criminal contempt. *Hicks ex rel. Feiock v. Feiock*, 485 U.S. ---, 99 L.Ed. 2d 721, 108 S.Ct. --- (1988). The *Hicks* Court refined this "character of relief" test by stating certain "bright-line" rules:

> The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.' If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

485 U.S. at ---, 99 L.Ed. 2d at 731 (citation omitted). The *Hicks* Court reasoned that the relief ordered is remedial and coercive (and thus civil in character) if the contemnor's compliance with the contempt order will avoid the effect of any determinate sentence or fine: the Court thus specifically noted that the addition of a "purge" clause would render even a determinate jail sentence civil in nature. 485 U.S. at ---, 99 L.Ed. 2d at 733. In justifying its use of such "bright-line" rules, the *Hicks* Court strongly questioned the efficacy of any attempt to "psychoanalyze" a trial court's contempt judgment in order to divine its underlying remedial and/or punitive purposes:

> The Court has eschewed any alternative formulation that would make the classification of the relief imposed in a State's proceedings turn simply on what their underlying purposes are perceived to be. . . . In contempt cases, both civil and criminal relief have aspects that can be seen as either remedial or punitive or both: when a court imposes fines and punishments upon a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of

modifying the contemnor's behavior to conform to the terms required in the order. . . . 'But such indirect consequences will not change [relief] which is merely coercive and remedial into that which is solely punitive in character, or vice versus.'

485 U.S. at ---, 99 L.Ed. 2d at 734 (quoting *Gompers v. Buck's Stove Co.*, 221 U.S. 418, 443, 55 L.Ed. 797, 806 (1911)).

Given the overlapping effects of civil and criminal contempt orders and the difficulty in ascertaining the court's remedial and/or punitive aims, we believe the *Hicks* Court's objective focus on the actual relief ordered allows the proper balance between the court's inherent power to protect its authority and the defendant's need for adequate procedural and evidentiary standards and effective appellate review. Accordingly, while it is true that underlying "punitive" as opposed to "remedial and coercive" purposes distinguish criminal from civil contempt orders, those respective purposes should be drawn from an examination of the character of the actual relief ordered by the court.

The character of the relief ordered should be classified as civil or criminal by applying certain straightforward rules suggested by *Hicks:*

*Civil Relief:* If the relief is imprisonment, it is coercive and thus civil if the contemnor may avoid or terminate his imprisonment by performing some act required by the court (such as agreeing to comply with the original order). If the relief is monetary, it is likewise civil if the monies are either paid to the complainant or defendant can avoid payment to the court by performing an act required by the court;

*Criminal Relief:* If the relief is imprisonment, it is punitive and thus criminal if the sentence is limited to a definite period of time without possibility of avoidance by the contemnor's performance of an act required by the court. If the relief is monetary, it is punitive if payable to the court rather than to the complainant.

Where *both* civil and criminal relief as defined above are imposed, the court must make all findings necessary to impose *both* classes of relief; however, the court must in that case afford the defendant all procedural and evidentiary standards appropriate to *criminal* contempt proceedings since "the criminal feature of the order

is dominant and fixes its character" upon the proceeding. *Hicks*, 485 U.S. --- at --- n.10, 99 L.Ed. 2d at 736 n.10 (quoting *Nye v. United States*, 313 U.S. 33, 42-43 (1941)). Like other determinate sentences, the imposition of probationary or suspended sentences is deemed criminal relief so long as the court does not order the sanctions avoided or purged by specified acts of the contemnor. *See Hicks*, 485 U.S. at --- n.11, 99 L.Ed. 2d at 736 n.11 (determinate probationary or suspended sentence, even with conditions, is criminal punishment and "not equivalent to conditional sentence that would allow the contemnor to avoid or purge . . . sanctions"). Thus, the imposition of probationary conditions under Section 15A-1343 and the possibility of early termination under Section 15A-1342(b) do not transform probationary or suspended sentences into civil relief. *Cf.* N.C.G.S. Sec. 15A-1343 (1983) (setting forth permissible conditions of probation including child support and restitution); N.C.G.S. Sec. 15A-1342(b) (1983) (court "may" terminate probation early "if warranted by the conduct of the defendant and the ends of justice"). However, specifically conditioning the imposition or effect of the probationary or suspended sentence upon the contemnor's purging himself would constitute civil relief.

B

[3]   Examining the relief evidenced by the instant court's contempt order reveals the court was attempting to coerce defendant's obedience and remedy plaintiff's lost child support: although the court ordered defendant confined in jail for a period of 29 days, it allowed defendant to avoid that punishment altogether by paying the entire $2,230 in arrearages. This constitutes remedial relief under the guidelines set forth above and therefore requires that we construe the court's order as adjudicating defendant in civil contempt. As there is no other relief ordered which is punitive in character, we need not address whether the court's findings and procedures would support an order for criminal contempt.

[4]   As the court made no findings of defendant's ability in June 1987 to pay the entire $2,230 arrearage, we must conclude there were inadequate findings to support the adjudication of civil contempt. *See Jones*, 62 N.C. App. at 749, 303 S.E. 2d at 584; *Green*, 130 N.C. at 579, 41 S.E. at 786.

Accordingly, we reverse the trial court's adjudication of defendant's civil contempt.

Reversed.

Judges PARKER and SMITH concur.