STATE v. MAUNEY

[106 N.C. App. 26 (1992)]

---

STATE OF NORTH CAROLINA v. MARCUS BENJAMIN MAUNEY

No. 9125DC608

(Filed 7 April 1992)

**1. Contempt of Court § 39 (NCI4th)— willful refusal to provide support of illegitimate child—refusal to submit to blood test— contempt—appeal to appellate division**

The State's motion to dismiss defendant's appeal was denied where defendant was charged with willfully neglecting or refus-

STATE v. MAUNEY

[106 N.C. App. 26 (1992)]

ing to provide adequate support or maintenance for his illegitimate child, refused to submit to blood tests as ordered, was found to be in "Indirect Civil Contempt," and appealed to the Court of Appeals. Although the State contended that the Court of Appeals lacked jurisdiction because this was a criminal action and appeal lies in superior court, the relief granted by the trial court, ordering defendant to submit to blood tests, was unequivocally civil in nature. N.C.G.S. § 5A-17 (1986).

**Am Jur 2d, Appeal and Error § 169; Contempt § 11.**

2. **Appeal and Error § 107 (NCI4th)— order to submit to blood test — contempt order — appeal not interlocutory**

An appeal from a contempt order was not interlocutory and the State's motion to dismiss was denied where, if defendant refuses the order to submit to blood tests, he would risk a fine or imprisonment, and if he complied, his challenge to the blood test would become moot.

**Am Jur 2d, Appeal and Error § 170.**

3. **Contempt of Court § 25 (NCI4th)— refusal to submit to blood tests — jurisdiction**

The trial court had jurisdiction to hold defendant in civil contempt for his refusal to submit to blood tests in a prosecution for willful failure to support his illegitimate child where the record demonstrates that defendant appeared at the Health Department on the day ordered, so that he at least had constructive notice of the order. Furthermore, defendant waived any jurisdictional argument since the district court already had jurisdiction over defendant as an ongoing case.

**Am Jur 2d, Bastards § 118.**

4. **Constitutional Law § 361 (NCI4th)— order to compel blood tests — no violation of due process**

Neither an order directing defendant to submit to blood tests in a prosecution for willful failure to support an illegitimate child nor N.C.G.S. § 8-50.1 violates defendant's constitutional rights to due process and to be free from unreasonable searches and seizures of his person. Blood tests are commonplace in our society and the statute and order in question do not authorize the indiscriminate taking of blood or the perform-

STATE v. MAUNEY

[106 N.C. App. 26 (1992)]

ance of a blood test by anyone other than a trained technician or anywhere other than a medical facility.

**Am Jur 2d, Searches and Seizures §§ 29, 105.**

**Blood grouping tests. 46 ALR2d 1000.**

APPEAL by defendant from judgment entered 2 April 1991 in CALDWELL County District Court by *Judge L. Oliver Noble, Jr.* Heard in the Court of Appeals 19 February 1992.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie B. Spalding, for the State.*

*Wilson, Palmer and Lackey, P.A., by W.C. Palmer, for defendant-appellant.*

WYNN, Judge.

The State's evidence tended to show that defendant was charged with willfully neglecting or refusing to provide adequate support or maintenance for his illegitimate child pursuant to N.C. Gen. Stat. § 49-2 (1984). On 24 September 1990 and on 18 December 1990, the district court ordered defendant to submit to blood tests, but defendant refused.

The State made a show cause motion, and the district court found that Judge Hodges had entered an order compelling blood tests to determine parentage on 18 December 1990. The order directed defendant to appear at the Caldwell County Health Department on 16 January 1991 to submit to "Red Cell, HLA and any other blood-grouping tests and comparisons which have been developed and adapted for the purposes of establishing or disproving parentage." The district court further found that defendant appeared, but refused to submit to the test because the blood was to be withdrawn by a phlebotomist rather than a nurse or a physician licensed under Chapter 90 of the General Statutes.

The district court concluded, as a matter of law, that defendant, without reasonable cause, had failed to comply with a reasonable court order. The district court further found that defendant was in "Indirect Civil Contempt" and ordered him to submit to the blood test on 17 April 1991 as arranged by laboratory personnel. Finally, the district court named the person to withdraw defend-

ant's blood, and determined that she was qualified. From the judgment or other disposition, defendant appealed.

### I.

[1] Prior to discussing the merits of this case, we must first address the State's motion to dismiss defendant's appeal. For the reasons which follow, we deny the State's motion.

The State contends that this Court lacks jurisdiction to hear this appeal because, as a criminal action, appeal lies in the superior court. Under N.C. Gen. Stat. § 5A-17 (1986), "[a] person found in criminal contempt may appeal in the manner provided for appeals in criminal actions, except appeal from a finding of contempt by a judicial official inferior to a superior court judge is by hearing de novo before a superior court judge." Alternatively, "[a] person found in civil contempt may appeal in the manner provided for appeals in civil actions," *id.* § 5A-24; specifically, to the Court of Appeals, *id.* § 7A-27 (1989).

In *O'Briant v. O'Briant*, 313 N.C. 432, 329 S.E.2d 370 (1985), our Supreme Court discussed the difficulty of distinguishing between civil and criminal contempt. The Court stated the following: "Where the punishment is to preserve the court's authority and to punish disobedience of its orders, it is criminal contempt. Where the purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil." *Id.* at 434, 329 S.E.2d at 372 (citing *Blue Jeans Corp. v. Amalgamated Clothing Workers of America*, 275 N.C. 503, 508-09, 169 S.E.2d 867, 869 (1969)). *See also* N.C. Gen. Stat. §§ 5A-11, 5A-21 (1986). This Court, in *Bishop v. Bishop*, 90 N.C. App. 499, 369 S.E.2d 106 (1988), because of the confusion engendered by discerning the purpose of a given remedy, clarified the *O'Briant* test. *See* Note, *The Distinction Between Civil and Criminal Contempt in North Carolina*, 67 N.C. L. Rev. 1281 (1989). The *Bishop* Court created a bright-line rule derived from the United States Supreme Court's decision in *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 99 L.Ed.2d 721 (1988):

> *Civil Relief*: If the relief is imprisonment, it is coercive and thus civil if the contemnor may avoid or terminate his imprisonment by performing some act required by the court (such as agreeing to comply with the original order). If the relief is monetary, it is likewise civil if the monies are either paid

to the complainant or defendant can avoid payment to the court by performing an act required by the court;

*Criminal Relief*: If the relief is imprisonment, it is punitive and thus criminal if the sentence is limited to a definite period of time without possibility of avoidance by the contemnor's performance of an act required by the court. If the relief is monetary, it is punitive if payable to the court rather than to the complainant.

*Bishop*, 90 N.C. App. at 505, 369 S.E.2d at 109.

In the case at bar, the trial judge concluded, as a matter of law, "that defendant has without reasonable excuse failed to comply with the lawful order of the court, and that the defendant had the means to comply with the court order and still has the means to comply with the court order, and that he is in indirect civil contempt for his failure to comply." Although the trial judge's characterization of the form of contempt is not conclusive, we agree that the defendant was in civil rather than criminal contempt. According to the *Bishop* Court's definition, the relief granted by the trial court, ordering defendant to submit to blood tests, was unequivocally civil in nature. Because we find this to be civil contempt, appeal lies in this Court.

[2] As an alternative basis for its motion to dismiss, the State contends that this appeal is interlocutory and is not immediately appealable. An appeal is available prior to a final decision if (1) the trial court's order affects a substantial right; and (2) the loss of that right will injure the party appealing if it is not corrected prior to final judgment. *Goldston v. American Motors Corp.*, 326 N.C. 723, 392 S.E.2d 735 (1990). *See* N.C. Gen. Stat. §§ 7A-27(d) (1989), 1-277 (1983).

In *Willis v. Power Co.*, 291 N.C. 19, 229 S.E.2d 191 (1976), the trial court found defendant in contempt for failure to comply with an order compelling discovery. Our Supreme Court reasoned that, by not entertaining defendant's appeal, defendant would be placed in the position of either risking a fine or imprisonment or complying with an erroneous order. *Id.* at 30, 229 S.E.2d at 198. The Court also stressed that the issues raised on appeal would become moot if the defendant complied with the purging conditions to avoid punishment. *Id.*

STATE v. MAUNEY

[106 N.C. App. 26 (1992)]

In the instant case, upon consideration of the rationale set forth by the *Willis* Court, we find that the contempt order is immediately appealable. If defendant refuses to comply, he risks a fine or imprisonment; if he complies, his challenge to the blood test may become moot. Accordingly, we find the State's argument to be without merit and deny its motion to dismiss defendant's appeal.

II.

[3] Defendant first contends that the record does not show that the order to compel blood tests was entered in open court or that it was served on the defendant or his attorney. Consequently, defendant argues that the trial court's finding the he was in willful contempt of the blood test order was erroneous. We disagree.

We note initially that defendant fails to cite any legal authority for this assignment of error. Nevertheless, we will address this issue, in our discretion, pursuant to N.C.R. App. P. 2 (1992). Defendant apparently argues that the district court was without jurisdiction to hold him in contempt for his refusal to submit to the blood tests. The record demonstrates that defendant appeared at the Caldwell County Health Department on the day as ordered, but refused to have his blood drawn. It is clear from the record before this Court that defendant at least had constructive notice of the district court's order. Furthermore, defendant has waived any jurisdictional argument since, as an ongoing case, the district court already had jurisdiction over defendant. *See Wilson v. Wilson*, 98 N.C. App. 230, 390 S.E.2d 354 (1990); *M.G. Newell Co., Inc. v. Wyrick*, 91 N.C. App. 98, 370 S.E.2d 431 (1988). We, therefore, find that defendant's argument is without merit.

III.

[4] Defendant also contends that N.C. Gen. Stat. § 8-50.1 (1986), and the order to compel blood tests entered on 18 December 1990, violate his constitutional rights to due process and to be free from unreasonable searches and seizures of his person. For the reasons which follow, we find no merit to defendant's contentions.

Defendant bases his due process challenge on the United States Supreme Court's decision in *Breithaupt v. Abram*, 352 U.S. 432, 1 L.Ed.2d 448 (1957). In *Breithaupt*, law enforcement officers acquired probable cause to believe that the defendant was driving under the influence of alcohol. A physician withdrew blood from the unconscious defendant at the hospital. Defendant was convicted

of involuntary manslaughter. Defendant then sought release from his imprisonment by a petition for a writ of habeas corpus, contending that the withdrawal of blood was a violation of his right to due process. The Supreme Court disagreed with defendant's due process challenge and stated the following concerning blood tests:

> [D]ue process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of "decency and fairness" that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process. The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors.

*Id.* at 436, 1 L.Ed.2d at 451. The Court further stated, however, that the "indiscriminate taking of blood under different conditions or by those not competent to do so" may be subject to attack. *Id.* at 438, 1 L.Ed.2d at 452. *See id.* at 437 n.4, 1 L.Ed.2d at 452 n.4.

Similarly, the Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 16 L.Ed.2d 908 (1966), rejected defendant's argument that a blood test taken without his consent violated his right to be free from unreasonable searches and seizures under the fourth amendment. The Court stressed that blood tests are commonplace in our society. *Id.* at 771, 16 L.Ed.2d at 920. Like the *Breithaupt* Court, however, the *Schmerber* Court stated the following: "We are thus not presented with the serious questions which would arise if a search involving use of medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment — for example, if it were administered by police in the privacy of the stationhouse." *Id.* at 771-72, 16 L.Ed.2d at 920.

The statute at issue in the instant case, N.C. Gen. Stat. § 8-50.1(a), provides, in relevant part:

> In the trial of any criminal action or proceeding in any court in which the question of parentage arises . . . the court before whom the matter may be brought, upon motion of the

STATE v. MAUNEY

[106 N.C. App. 26 (1992)]

State or the defendant, shall order that the alleged-parent defendant, the known natural parent, and the child submit to any blood tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage and which are reasonably accessible to the alleged-parent defendant, the known natural parent, and the child.

*Id.* The order in question in this case directs defendant "to submit to Red Cell, HLA and any other blood-grouping tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage," with the blood to be withdrawn by a phlebotomist at the Caldwell County Health Department.

We find that neither the order directing defendant to submit to blood tests nor section 8-50.1 of the General Statutes violate defendant's constitutional rights to due process and to be free from unreasonable searches and seizures of his person. As stated by the United States Supreme Court, blood tests are commonplace in our society. Section 8-50.1 authorizes such testing only upon motion made by either the State or the defendant, and the court involved in the matter must order the test. The statute and order in question do not authorize the "indiscriminate taking of blood" as warned by the *Breithaupt* Court nor do they allow the performance of a blood test by anyone other than a trained technician or anywhere other than a medical facility as cautioned by the *Schmerber* Court. We, therefore, find that the order and the challenged statute are free from constitutional infirmities and overrule defendant's assignment of error.

No error.

Judges ARNOLD and LEWIS concur.