ENOCHS, Judge.
*756 Barry Randall Revels ("Defendant") appeals from the trial court's order finding him in criminal contempt of court. On appeal, Defendant contends that the trial court erred by (1) finding him in both civil and criminal contempt based on the same conduct; (2) finding him in criminal contempt of court; (3) relying upon a fatally defective show cause order thereby depriving it of jurisdiction; and (4) failing to enter a finding of guilty with regard to its determination that Defendant was in criminal contempt of court. Defendant also asserts that he received ineffective assistance of counsel. After careful review, we affirm.
Factual Background
RST Global Communications, LLC ("RST") is a company located in Cleveland County, North Carolina which is in the business of installing and maintaining fiber optic networks and offering network communication services to third parties. Defendant is a 30% member and former head of day-to-day operations of RST. Defendant ran the company's daily operations from his home address located at 335 Magness Road in Shelby, North Carolina.
In early 2014, RST became aware that Defendant was improperly using company funds from RST's bank accounts for personal debts and expenditures. As a result, a meeting of RST's members was called by RST's Chief Executive Officer, Dan Limerick ("Limerick"). A series of unanimous resolutions were approved at the meeting including that (1) RST operations would be transferred to the company's headquarters at 1300 South Dekalb Street in Shelby, North Carolina; (2) Doug Brown ("Brown") would assume responsibility *747 for RST's day-to-day operations; (3) Defendant would no longer be paid a salary; and (4) all company-issued credit and debit cards would be turned in and no longer used without the express authorization of RST's members.
Defendant refused to comply with these resolutions and retained RST records, data, and property at his personal residence. He also continued to communicate with other business entities on RST's behalf and refused to turn over his company issued credit and debit cards.
After several "actions without meetings" issued by Limerick and Brown demanding that Defendant (1) return items of RST's property including checkbooks, credit and debit cards, keys, lock combinations, account login and password information; (2) have all company mail being sent to his residence rerouted to the South Dekalb Street Office; and (3) remove himself from all company bank accounts, Defendant *757 still refused to comply. As a result, RST filed a verified complaint and motion for a temporary restraining order ("TRO") against Defendant in Cleveland County Superior Court on 30 April 2015.
A hearing on RST's motion for a TRO was held before the Honorable Forrest Donald Bridges on 4 May 2015, and on 5 May 2015, Judge Bridges granted RST's motion and entered a TRO against Defendant.
Judge Bridges continued the matter until 6 May 2015 in order to give Defendant the opportunity to obtain counsel. Defendant did not attend the 6 May 2015 hearing, and the court issued a second TRO on 8 May 2015 incorporating the terms of the 5 May 2015 TRO and adding several additional provisions thereto.
At a subsequent hearing on 18 May 2015, RST moved for a preliminary injunction and submitted the sworn affidavit of Brown delineating Defendant's failure to return RST's property or otherwise cooperate with Judge Bridges' TRO. The court entered an order for Defendant to show cause and a preliminary injunction that same day.
On 8 June 2015, a hearing on the show cause order was held before the Honorable Lisa C. Bell. At the outset of the proceedings, Judge Bell informed Defendant that the hearing would determine whether he would be found in criminal or civil contempt. The case was ultimately continued several times until 23 September 2015.
At the 23 September 2015 hearing, RST presented evidence that Defendant had not complied with the TRO or the preliminary injunction. As a result, Judge Bell found Defendant in both civil and criminal contempt of court and entered corresponding orders on that same day. On 23 October 2015, Judge Bell entered a detailed order of criminal and civil contempt laying out findings of fact supporting her conclusion that Defendant was in both civil and criminal contempt of court. Defendant gave oral notice of appeal of the 23 September 2015 criminal contempt order in open court.
Analysis
I. Finding Both Civil and Criminal Contempt Based Upon the Same Conduct
Defendant first contends on appeal that the trial court found him to be in both civil and criminal contempt based upon the same conduct in violation of N.C. Gen. Stat. § 5A-12(d) (2015) and N.C. Gen. Stat. § 5A-21(c) (2015). We disagree.
*758 At the outset we note that contempt in this jurisdiction may be of two kinds, civil or criminal, although we have stated that the demarcation between the two may be hazy at best. Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties.
A major factor in determining whether contempt is civil or criminal is the purpose for which the power is exercised. Where the punishment is to preserve the court's authority and to punish disobedience of its orders, it is criminal contempt. Where the purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil. The *748 importance in distinguishing between criminal and civil contempt lies in the difference in procedure, punishment, and right of review.
O'Briant v. O'Briant , 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985) (internal citations omitted).
Defendant is correct as a general proposition that a person cannot be found in both civil and criminal contempt for the same conduct. See N.C. Gen. Stat. § 5A-12(d) ("A person held in criminal contempt under this Article shall not, for the same conduct, be found in civil contempt under Article 2 of this Chapter, Civil Contempt."); N.C. Gen. Stat. § 5A-21(c) ("A person who is found in civil contempt under this Article shall not, for the same conduct, be found in criminal contempt under Article 1 of this Chapter."). However, where divergent and distinct conduct arising from the same underlying nucleus of facts would give rise to independent findings of both civil and criminal contempt, a trial court does not err by finding a person in criminal contempt for certain conduct while also finding him in civil contempt for other separate and discrete conduct. See, e.g. , Adams Creek Assocs. v. Davis , 186 N.C.App. 512, 527, 652 S.E.2d 677, 687 (2007) ("Defendants argue that they were found in civil and criminal contempt for the same behavior, in violation of N.C. Gen. Stat. § 5A-21(c) and 5A-23(g), which prohibit finding a defendant in both civil and criminal contempt for the same behavior. ... [D]efendants were found in civil contempt for failing to comply with the court's 2004 order, and were found in criminal contempt for their testimony threatening to *759 disobey future orders of the court. Thus, defendants were found in civil and criminal contempt on the basis of different acts.").
Indeed, in Adams Creek Assocs. , the defendants were found in criminal contempt for continuing to trespass upon the plaintiff's property in defiance of the trial court's order. They then testified at trial that they intended to continue to trespass on the property in the future because they erroneously believed that the property was theirs. Id. Despite the overlapping nucleus of facts-to wit, trespass on the plaintiff's real property-the trial court also found them in civil contempt. Id. On appeal, the defendants argued "that they were found in civil and criminal contempt for the same behavior, in violation of N.C. Gen. Stat. § 5A-21(c) and 5A-23(g), which prohibit finding a defendant in both civil and criminal contempt for the same behavior." Id. In rejecting this argument, this Court emphasized that "defendants were found in civil contempt for failing to comply with the court's 2004 order, and were found in criminal contempt for their testimony threatening to disobey future orders of the court." Id. Therefore, both the civil and criminal contempt orders were based upon the defendants' trespass on the exact same piece of land, but were deemed distinguishable based on the diverging conduct and intent of the defendants-that is the disobedience of a past trial court order on the one hand accounting for one type of conduct, and the intention to continue to disobey the court's orders in the future as a separate type of conduct. Id.
This is in line with the O'Briant line of cases which emphasize that " '[a] major factor in determining whether contempt is criminal or civil is the purpose for which the power is exercised.' " Watson v. Watson , 187 N.C.App. 55, 61, 652 S.E.2d 310, 315 (2007) (quoting Bishop v. Bishop, 90 N.C.App. 499, 503, 369 S.E.2d 106, 108 (1988) ).
Criminal contempt is imposed in order to preserve the court's authority and to punish disobedience of its orders. Criminal contempt is a crime, and constitutional safeguards are triggered accordingly. On the other hand, when the court seeks to compel obedience with court orders, and a party may avoid the contempt sentence or fine by performing the acts required in the court order, the contempt is best characterized as civil.
Id. (internal citations omitted).
In the present case, the trial court's 23 October 2015 order of criminal and civil contempt was divided into two parts. In the first section, the trial court, applying the beyond a reasonable doubt standard, found that *760 Defendant failed to (1) cause RST's mail to be delivered to the Dekalb Street address in violation of the TRO; (2) deliver all of *749 RST's equipment to the Dekalb Street address including but not limited to at least two phones as required by the TRO; (3) provide account login and password information in violation of the TRO; and (4) relinquish RST's credit and debit cards in violation of the TRO and preliminary injunction.
In the second section of the order, the trial court, applying the greater weight of the evidence standard, found Defendant in civil contempt for (1) instructing third-parties to break RST's fiber optic cables and not to repair them until he got a new contract; (2) using RST's equipment and business connections to continue to appropriate business opportunities for his newly formed business; and (3) retaining RST's equipment detailed in the TRO and preliminary injunction.
Here, it is readily apparent that, in accord with Adams Creek Assocs. , the trial court found Defendant in civil contempt based on his continued conduct in violation of the TRO and preliminarily injunction in attempting to frustrate RST's business interests while simultaneously attempting to further his own at their expense, and found him in criminal contempt based upon his past conduct , that is, his refusal to obey the trial court's TRO and preliminary injunction in failing to adhere to their terms including the return of various company assets of RST. As a result, the trial court did not find Defendant in civil and criminal contempt for the same conduct, but instead for distinctly separate and discrete conduct based on a partially overlapping nucleus of facts. Therefore, Defendant's argument on this issue is overruled.
II. Criminal Contempt
In a related argument, Defendant asserts that the trial court erred in finding him in criminal contempt because the punishment imposed upon him was civil in nature as opposed to the type of punitive punishment reserved for those found to be in criminal contempt. We disagree.
As noted above, the trial court is fully authorized to impose both civil and criminal contempt in the same proceeding as long as they are not imposed for the same conduct. Therefore, the trial court was within its authority to impose upon Defendant both (1) criminal contempt to punish Defendant's past conduct in failing to adhere to the TRO and preliminary injunction; and (2) civil contempt designed to compel Defendant to comply with its directives.
In the present case, the trial court ordered, in pertinent part, as follows:
*761 Effective immediately, Defendant will serve a 7-day active sentence in the Cleveland County jail of a total sentence of 30 days in jail for his willful criminal contempt of this Court. The remaining 23 days will be suspended, and Defendant will be on unsupervised probation for a period of 12 months.
This sentence was clearly punitive in nature and was imposed as punishment for Defendant's criminal contempt of court.
The trial court then further separately ordered the following: "Defendant will be and is indefinitely incarcerated in the Cleveland County jail for his willful civil contempt of this Court, which will begin immediately upon the conclusion, release, or other cessation of his 7-day active sentence until he complies with the following purge conditions...." The trial court then imposed conditions that Defendant return RST's assets, complete a change of address causing RST's business mail to be sent to the Dekalb Street address instead of to his house, and surrender his company debit and credit cards to RST.
The latter portion of the trial court's order clearly imposes conditions for Defendant's release from imprisonment after the conclusion of his criminal contempt sentence. The punishment is indefinite and remedial in nature and designed to ensure compliance with the court's orders as opposed to a punishment for past violations of the TRO and preliminary injunction. As a result, both the sentence imposed for criminal contempt and the sentence imposed for civil contempt are consecutive in nature and do not overlap in the manner Defendant suggests. Consequently, Defendant's argument on this issue is without merit.
*750 III. Jurisdiction
Defendant next argues that the trial court's show cause order failed to adequately allege that he was subject to being found in criminal contempt of court with sufficient specificity so as to confer jurisdiction upon the trial court. We disagree.
N.C. Gen. Stat. § 5A-13(b) (2015) provides that "[a]ny criminal contempt other than direct criminal contempt is indirect criminal contempt and is punishable only after proceedings in accordance with the procedure required by G.S. 5A-15." N.C. Gen. Stat. § 5A-15(a) (2015) in turn provides, in pertinent part, that "[w]hen a judicial official chooses not to proceed summarily against a person charged with direct criminal contempt or when he may not proceed summarily, he may proceed by an order directing the person to appear before a judge at a reasonable time *762 specified in the order and show cause why he should not be held in contempt of court." See State v. Coleman , 188 N.C.App. 144, 149, 655 S.E.2d 450, 453 (2008) ("For indirect criminal contempt proceedings in which a trial court is not allowed to proceed summarily, a show cause order is analogous to a criminal indictment and is the means by which the defendant is afforded the constitutional safeguard of notice." (internal footnote omitted)). That is precisely what occurred in the present case.
Moreover, our caselaw has consistently held that a show cause order is sufficient to confer jurisdiction on a trial court for finding a defendant in indirect criminal contempt where it incorporates by reference a prior court order that a defendant has failed to comply with.
When issuing a criminal contempt citation, the presiding judge need only enter an order directing the person to appear before a judge and show cause why he should not be held in contempt of court. Unlike a citation for civil contempt, which requires the judge's order be accompanied by a sworn affidavit and a finding of probable cause, there is no requirement that the judge make a finding of improper conduct upon the issuance of a criminal contempt citation.
In this case, [the trial court judge's] order directed [d]efendant to appear and show cause why he should not be punished for contempt. This language has been construed to have reference to criminal contempt. Indeed, [d]efendant refers to the order as one for criminal contempt in his own motion to dismiss. Furthermore, the order seeks to punish [d]efendant for interfering with the administration of justice, a function of criminal contempt, rather than compel obedience to an order entered to benefit a private party, a function of civil contempt. Accordingly, [the judge] was not required to make a specific finding of improper conduct, and [the court] properly denied [d]efendant's motion to dismiss.
State v. Pierce , 134 N.C.App. 149, 151, 516 S.E.2d 916, 919 (1999) (internal citations, quotation marks, and ellipses omitted); see also Bennett v. Bennett , 71 N.C.App. 424, 322 S.E.2d 439 (1984) (outstanding show cause order upon which no action had been taken satisfied statutory requirement of N.C. Gen. Stat. § 5A-15 that a contempt hearing be held on a show cause order).
*763 Consequently, because the trial court entered a show cause order requiring Defendant to appear in court and explain why he had failed to comply with the TRO and preliminary injunction, it was fully authorized to find him in criminal contempt of court. Defendant's argument that the trial court never gained jurisdiction over the criminal contempt proceedings should, as a result, be overruled.[1]
IV. Guilty Mandate
Defendant next argues that because the trial court never expressly used the term "guilty" in finding him in contempt of court, his conviction must be overturned. We disagree.
*751 It is apparent in the present case that the trial court found Defendant guilty of both civil and criminal contempt. Its order clearly stated that "Defendant is in civil and criminal contempt of this Court[.]" The trial court based this conclusion upon application of the beyond a reasonable doubt standard to the evidence before it, which is supported by the record.
Our Supreme Court has held that "insubstantial technical errors which could not have affected the result will not be held prejudicial. The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred." State v. Alexander , 279 N.C. 527, 538, 184 S.E.2d 274, 282 (1971) (internal citation omitted); see State v. Keyes , 56 N.C.App. 75, 79, 286 S.E.2d 861, 863-64 (1982) ("Mere technical error is not sufficient to require the granting of a new trial. The error must be so prejudicial as to affect the result.").
Defendant's attempt to rely on this Court's decision in State v. Phillips , 230 N.C.App. 382, 750 S.E.2d 43 (2013), in arguing that the trial court's failure to state Defendant was "guilty" is misplaced. In that case, this Court found that the trial court's order was fatally defective because the trial court had failed to indicate that it had applied the beyond a reasonable doubt standard, thereby precluding this Court on appeal from being able to discern that it had actually done so in accordance with the law. Id. at 385, 750 S.E.2d at 45. Such is not the case here where the trial court-as set forth in the plain language of its order-correctly *764 applied the beyond a reasonable doubt standard to the evidence before it and unambiguously determined that Defendant was, in fact, in criminal contempt of court. Defendant was then sentenced accordingly.
The fact that the trial court did not use the talismanic term "guilty" here does not affect the outcome of Defendant being found in criminal contempt of court. Defendant cannot show that "but for" the omission of such language, the trial court would have reached a contrary result. Consequently, Defendant cannot establish that he was prejudiced and his argument on this issue is overruled.
V. Ineffective Assistance of Counsel
Defendant's final argument on appeal is that he received ineffective assistance of counsel due to his trial counsel's failure to object to the criminal contempt proceedings. Defendant's argument is without merit.
In order to prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.
Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
State v. Edgar , --- N.C. App. ----, ----, 777 S.E.2d 766, 770-71 (2015) (internal citations and quotation marks omitted) (quoting State v. Allen , 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) ).
Because, for the reasons stated above, Defendant cannot show that the trial court erred procedurally in finding him in civil and criminal contempt of court, it logically follows that he cannot demonstrate that his trial counsel's failure to object to the proceedings affected the outcome. Therefore, he cannot successfully establish an ineffective assistance of counsel claim.
Conclusion
For the reasons stated above, we affirm the trial court's criminal contempt order.
AFFIRMED.
Judge ZACHARY concurs.
Judge ELMORE dissents in a separate opinion.

Defendant also makes a brief argument that we should impute the requirements for a larceny indictment onto a show cause order alleging criminal contempt. Defendant has cited to no case law in support of this proposition and our research has revealed none. Consequently, this argument is without merit.