DONNA McBRIDE v. TERRY McBRIDE

No. 419PA92

(Filed 2 July 1993)

1. **Indigent Persons § 14 (NCI4th) — failure to pay child support — civil contempt — incarceration — necessity for appointment of counsel**

   Principles of due process embodied in the Fourteenth Amendment to the U.S. Constitution require that, absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages. To the extent that the decision in *Jolly v. Wright*, 300 N.C. 83 (1980), is inconsistent with this holding, that decision is overruled.

   **Am Jur 2d, Criminal Law §§ 735, 977.**

2. **Indigent Persons § 14 (NCI4th) — nonsupport — civil contempt — necessity for appointment of counsel — duties of trial court**

   At the outset of a civil contempt proceeding for nonsupport, the trial court should assess the likelihood that the defendant may be incarcerated. If the court determines that the defendant may be incarcerated as a result of the proceeding, the court should then inquire into defendant's desire to be represented by counsel and his ability to pay for legal representation, and the court must appoint counsel to represent the defendant if he wishes representation but is unable due to his indigence to pay for such representation.

   **Am Jur 2d, Criminal Law §§ 735, 977.**

On appeal of right, pursuant to N.C.G.S. § 7A-30(1), and on discretionary review of a decision of the Court of Appeals, 108 N.C. App. 51, 422 S.E.2d 346 (1992), affirming an order entered by Fuller, J., in District Court, Davidson County, on 7 June 1991. Heard in the Supreme Court on 13 May 1993.

*Central Carolina Legal Services, Inc., by Stanley B. Sprague, for the defendant-appellant.*

*No counsel contra.*

MITCHELL, Justice.

On 12 January 1989, the defendant signed a Voluntary Support Agreement in which he agreed to pay $40 per week in child support. On the same day, that agreement was approved and signed by a District Court Judge and thereby became a court order. On 10 May 1991, after the defendant failed to appear in court to respond to a motion to show cause why he should not be held in contempt for failure to pay child support as required by the 12 January 1989 order, an order was entered for his arrest. On 7 June 1991, the defendant was brought before the District Court, Davidson County, for a contempt hearing. The defendant was not represented by counsel, and the issue of whether the defendant was entitled to appointed counsel because of indigence was not raised. The defendant represented himself. The trial court found the defendant in willful contempt of court and ordered that he be held in custody until he purged himself of contempt by paying $1,380.46, the full amount of child support arrearage which he owed. The trial court, however, made no determination as to whether the defendant was presently able to pay that amount.

The defendant remained in jail until 2 July 1991, when he gave notice of appeal and was released pending his appeal. He argued on appeal to the Court of Appeals that, because he was indigent at the time of the contempt hearing which resulted in his incarceration, the trial court had violated his constitutional right to due process by failing to appoint counsel to represent him at that hearing. The Court of Appeals, relying on this Court's holding in *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980), rejected the defendant's due process arguments. 108 N.C. App. at 54, 422 S.E.2d at 347. The defendant filed a notice of appeal to this Court on 8 December 1992, as a matter of right under N.C.G.S. § 7A-30(1), involving a substantial question arising under the Constitution of the United States. Additionally, on 11 February 1993, we allowed the defendant's petition for discretionary review of the decision of the Court of Appeals.

In *Jolly*, this Court considered whether an indigent defendant facing incarceration in a civil contempt proceeding brought to enforce compliance with a child support order is constitutionally entitled to representation by appointed counsel. We distinguished the right to counsel in a civil contempt proceeding from the right to counsel in a criminal proceeding, stating that the source of any

McBRIDE v. McBRIDE

[334 N.C. 124 (1993)]

right to counsel in a civil contempt action is the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, while the Sixth and Fourteenth Amendments are the source of a criminal defendant's right to counsel. 300 N.C. at 92, 265 S.E.2d at 142. In *Jolly*, we held that

> due process does not require that counsel be automatically appointed for indigents in such cases; rather, the minimum requirements of due process are satisfied by evaluating the necessity of counsel on a case-by-case basis. . . . [D]ue process requires appointment of counsel for indigents in nonsupport civil contempt proceedings only in those cases where assistance of counsel is necessary for an adequate presentation of the merits, or to otherwise ensure fundamental fairness.

*Id.* at 93, 265 S.E.2d at 143 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 36 L. Ed. 2d 656, 666 (1973)). Subsequent decisions by the Supreme Court of the United States and other courts pertaining to the issue of an indigent defendant's right to appointed counsel in a civil contempt proceeding, however, now compel us to re-examine the validity of our holding in *Jolly*.

After our decision in *Jolly*, the Supreme Court of the United States considered whether an indigent parent in a parental status termination proceeding is entitled to appointed counsel by virtue of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *Lassiter v. Dept. of Social Servs. of Durham County*, 452 U.S. 18, 24, 68 L. Ed. 2d 640, 647 (1981). Although in *Lassiter* the Court concluded that there was no due process requirement of automatic appointment of counsel in a proceeding to terminate parental rights, the Court's analysis in that case is instructive with regard to the analysis which this Court must apply in addressing the issue which we face here.

The Court in *Lassiter* emphasized that, in determining whether due process requires the appointment of counsel for an indigent litigant in a particular proceeding, a court must first focus on the potential curtailment of the indigent's personal liberty rather than on the "civil" or "criminal" label placed on the proceeding. Where due process is concerned, "it is the defendant's interest in personal freedom . . . which triggers the right to appointed counsel." *Lassiter*, 452 U.S. at 25, 68 L. Ed. 2d at 648. The Court noted that, irrespective of the "civil" or "criminal" label placed on a proceeding, "as a litigant's interest in personal liberty diminishes,

McBRIDE v. McBRIDE

[334 N.C. 124 (1993)]

so does his right to appointed counsel." *Id.* at 26, 68 L. Ed. 2d at 649. Thus, a defendant in a "civil" juvenile delinquency proceeding is entitled to counsel if the proceeding "may result in commitment to an institution in which the juvenile's freedom is curtailed," *id.* at 25, 68 L. Ed. 2d at 648 (quoting *In re Gault,* 387 U.S. 1, 41, 18 L. Ed. 2d 527, 554 (1967)), while, even in criminal prosecutions, an indigent defendant is not entitled to appointed counsel if the prosecution does not result in actual imprisonment. *Id.* (citing *Scott v. Illinois,* 440 U.S. 367, 373, 59 L. Ed. 2d 383, 389 (1979)).

The Supreme Court concluded in *Lassiter* that "[t]he pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." *Id.* The Court further concluded that its precedents establish "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." *Id.* at 26-27, 68 L. Ed. 2d at 649. The Supreme Court thus determined that a presumption against appointed counsel exists when there is "the absence of at least a potential deprivation of physical liberty" in a particular proceeding. *Id.* at 31, 68 L. Ed. 2d at 652.

Because there was no potential deprivation of physical liberty in the proceeding at issue in *Lassiter*—a proceeding to terminate parental rights—the Court considered the following three factors: (1) the private interests at stake in the proceeding; (2) the government's interest; and (3) the risk that the procedures being used will lead to erroneous decisions. *Lassiter,* 452 U.S. at 27, 68 L. Ed. 2d at 649 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33 (1976)). The Court then weighed these three factors against the presumption that a defendant is not entitled to appointed counsel in a proceeding in which his physical liberty is not at stake. Based on this analysis, the Court concluded that due process does not require the appointment of counsel in every parental termination proceeding and adopted the case-by-case standard set forth in *Gagnon v. Scarpelli,* 411 U.S. at 790, 36 L. Ed. 2d at 666, for determining whether appointed counsel is required in a proceeding to terminate parental rights.

McBRIDE v. McBRIDE

[334 N.C. 124 (1993)]

In *Gagnon*, the Supreme Court held that an indigent, previously sentenced probationer has a due process right to appointed counsel in a probation revocation hearing only on a case-by-case basis — the state authority administering the probation and parole system has discretion to determine whether counsel is necessary in a particular case to preserve the fundamental fairness of the proceeding. *Id.* The Court reasoned that a probationer has a more limited right to due process than does a criminal defendant who has not yet been convicted of the criminal offense of which she is accused. 411 U.S. at 789, 36 L. Ed. 2d at 666. Because probationers and parolees already have been convicted of the crimes which resulted in their probation or parole, and restrictions have been placed on their continued physical freedom, they have only a conditional interest in physical liberty. *See Morrisey v. Brewer*, 408 U.S. 471, 481-82, 33 L. Ed. 2d 484, 494-95 (1972).

In *Jolly*, this Court relied upon *Gagnon* as the basis for our holding that, in nonsupport civil contempt cases, "the minimum requirements of due process are satisfied by evaluating the necessity of counsel on a case-by-case basis." 300 N.C. at 93, 265 S.E.2d at 143. We reasoned that the potential loss of liberty in parole or probation revocation proceedings "is much more serious and extensive than in nonsupport civil contempt cases," focusing on our assumption that "a person in civil contempt holds the key to his own jail by virtue of his ability to comply" and on our finding of a general lack of complexity involved in civil contempt proceedings for nonsupport. *Id.* Recent practical experience in the courts of North Carolina has diminished our faith in our assumption in *Jolly* that incarcerated civil contemnors hold the keys to their own jail by virtue of their ability to comply with the purge clauses contained in the orders of contempt resulting in their incarceration.

Furthermore, the federal circuit courts of appeal which have addressed the issue now before us appear to have unanimously concluded that due process requires that an indigent defendant in a civil contempt proceeding not be incarcerated absent the assistance of appointed counsel.[1] The majority of state courts

---

1. *Walker v. McLain*, 768 F.2d 1181 (10th Cir. 1985), *cert. denied*, 474 U.S. 1061, 88 L. Ed. 2d 781 (1986); *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984); *U.S. v. Bobart Travel Agency, Inc.*, 699 F.2d 618 (2d Cir. 1983); *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir. 1983); *U.S. v. Anderson*, 553 F.2d 1154 (8th Cir. 1977) (per curiam); *Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir. 1973); *In re Kilgo*, 484 F.2d 1215 (4th Cir. 1973). *See also Leonard v. Hammond*, 804 F.2d 838 (4th Cir.

McBRIDE v. McBRIDE

[334 N.C. 124 (1993)]

which have addressed this issue have reached the same conclusion.[2] In light of *Lassiter* and the numerous recent federal and state court decisions which have addressed the issue now before us, we conclude that our focus in *Jolly* was misplaced. Therefore, we now reconsider the issue of whether due process requires that an indigent defendant be provided appointed counsel at state expense before he may be incarcerated for civil contempt.

As we have pointed out, the Supreme Court of the United States expressly stated in *Lassiter*, albeit by *obiter dictum*, that its precedents compel "the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." 452 U.S. at 26-27, 68 L. Ed. 2d at 649. We agree with the view expressed by courts such as the United States Court of Appeals for the Fourth Circuit that: "Although the Court applied a case-by-case approach to the *Lassiter* facts (parental termination proceedings), the Court recognized that a presumption that an indigent has a right to appointed counsel arises when, if he loses, he may be deprived of his physical liberty." *Leonard v. Hammond*, 804 F.2d 838, 841 (4th Cir. 1986). *See also Mead v. Batchlor*, 435 Mich. 480, 493, 460 N.W.2d 493, 499 (1990) (noting "the clear indication that if the indigent's liberty interest had been at stake in *Lassiter*, she would have been entitled to counsel."). *But cf. Walker v. McLain*, 768 F.2d 1181, 1183 n.1 (10th Cir. 1985), *cert. denied*, 474 U.S. 1061, 88 L. Ed. 2d 781 (1986)

---

1986) (expressing the view that, if faced with the issue, the Supreme Court of North Carolina would reconsider *Jolly* in light of *Lassiter*).

2. *Otton v. Zaborac*, 525 P.2d 537 (Alaska 1974); *Dube v. Lopes*, 40 Conn. Supp. 111, 481 A.2d 1293 (1984); *In re Marriage of Stariha*, 509 N.E.2d 1117 (Ind. Ct. App. 1987); *McNabb v. Osmundson*, 315 N.W.2d 9 (Iowa 1982); *Rutherford v. Rutherford*, 296 Md. 347, 464 A.2d 228 (1983); *Mead v. Batchlor*, 435 Mich. 480, 460 N.W.2d 493 (1990); *Cox v. Slama*, 355 N.W.2d 401 (Minn. 1984); *Ex Parte Martinez*, 775 S.W.2d 455 (Tex. Ct. App. 1989), *overruled on other grounds by Ex Parte Linder*, 783 S.W.2d 754 (Tex. Ct. App. 1990); *Tetro v. Tetro*, 86 Wash. 2d 252, 544 P.2d 17 (1975); *Ferris v. State ex rel. Maass*, 75 Wis. 2d 542, 249 N.W.2d 789 (1977). *See also Carroll v. Moore*, 228 Neb. 561, 423 N.W.2d 757 (1988), *cert. denied*, 488 U.S. 1019, 102 L. Ed. 2d 807 (1989) (indigent putative father entitled to appointed counsel in a paternity proceeding; once paternity established, father is responsible for child support and may be incarcerated for failure to provide it).

*Contra In re Marriage of Betts*, 200 Ill. App. 3d 26, 558 N.E.2d 404 (1990), *appeal denied*, 136 Ill. 2d 541, 567 N.E.2d 328 (1991); *Meyer v. Meyer*, 414 A.2d 236 (Me. 1980); *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974); *State ex rel. Dept. of Human Services v. Rael*, 97 N.M. 640, 642 P.2d 1099 (1982); *In re Calhoun*, 47 Ohio St. 2d 15, 350 N.E.2d 665 (1976).

(implying that *Lassiter* does not establish a presumption of a right to counsel where personal liberty is at stake, but merely "indicates that, where personal liberty is *not* at stake, the court must take a second step in the analysis and weigh the combination of the *Mathews* factors against a presumption *against* the right to counsel."). Accordingly, we conclude that principles of due process embodied in the Fourteenth Amendment required the trial court in the present case to apply the presumption in favor of this defendant's right to appointed counsel in the hearing which resulted in his incarceration.

The private interest at stake in the present case is, perhaps, the most fundamental interest protected by the Constitution of the United States—the interest in personal liberty. A defendant who is found in civil contempt and incarcerated for nonsupport does not "hold the keys to the jail" if he cannot pay the child support arrearage which will procure his release. Under such circumstances, the deprivation of liberty that occurs is tremendous and may not be diminished by the fact that a civil contempt order contains a purge clause providing for the contemnor's release upon payment of arrearages. While it is true that a defendant in a civil contempt action should not be fined or incarcerated for failing to comply with a court order without a determination by the trial court that the defendant is presently capable of complying, *Jolly*, 300 N.C. at 92, 265 S.E.2d at 142, the facts of the present case illustrate that trial courts do not always make such a determination before ordering the incarceration of a civil contemnor. A trial court's failure to make this determination may result in the incarceration of an indigent defendant who is without the means to procure his release and who, absent those means, may be incarcerated for an indeterminate period of time.[3] Under such facts, one court has pointed out that it is "absurd to distinguish criminal and civil incarceration; from the perspective of the person incarcerated, the jail is just as bleak no matter which label is used." *Walker v. McLain*, 768 F.2d at 1183 (citing *Ridgway v. Baker*, 720 F.2d 1409, 1413 (5th Cir. 1983) ). When a truly indigent defendant is jailed

---

3. A person confined for civil contempt for failure to comply with a court order may be imprisoned as long as the purpose of the order may still be served by compliance and the person to whom the order is directed is able to comply. N.C.G.S. § 5A-21 (1986). In contrast, N.C.G.S. § 5A-12 provides that a defendant found in criminal contempt of court for failure to comply with a court order may be confined for a maximum of 30 days.

pursuant to a civil contempt order which calls upon him to do that which he cannot do—to pay child support arrearage which he is unable to pay—the deprivation of his physical liberty is no less than that of a criminal defendant who is incarcerated upon conviction of a criminal offense.

Experience has now shown that absent appointed counsel for indigent defendants in civil contempt proceedings, the risk of an erroneous deprivation of personal liberty is high. Because, pursuant to N.C.G.S. § 5A-21, a trial court may not imprison a civil contemnor absent a finding of the contemnor's present ability to comply with the court order, indigent defendants faced with imprisonment in a civil contempt proceeding for nonpayment of child support could avoid imprisonment if they showed that they were unable to pay the amount of child support owed at the time of the hearing. However, as the present case illustrates, indigent defendants often are unaware of this fact. Further, many such defendants would not know how to prove their inability to pay. Despite the statutory requirements, experience subsequent to our decision in *Jolly* also has shown that trial courts do at times order the imprisonment of an unrepresented civil contemnor in a nonsupport case without determining whether he is able to pay the amount of child support owed.[4] An attorney would raise such issues on behalf of an indigent defendant, thereby preventing an unjustified deprivation of the defendant's physical liberty and increasing the accuracy of the proceeding.

[1] In light of the Supreme Court's opinion in *Lassiter*, we now hold that principles of due process embodied in the Fourteenth Amendment require that, absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages. To the extent that our decision in *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980), is inconsistent with this holding, that decision is overruled.

---

4. An examination of civil contempt cases which have been reviewed by this State's appellate courts indicates that the failure of trial courts to make a determination of a contemnor's ability to comply is not altogether infrequent. *See Mauney v. Mauney*, 268 N.C. 254, 150 S.E.2d 391 (1966); *Bishop v. Bishop*, 90 N.C. App. 499, 369 S.E.2d 106 (1988); *Lee v. Lee*, 78 N.C. App. 632, 337 S.E.2d 690 (1988); *McMiller v. McMiller*, 77 N.C. App. 808, 336 S.E.2d 134 (1985); *Brower v. Brower*, 70 N.C. App. 131, 318 S.E.2d 542 (1984); *Hodges v. Hodges*, 64 N.C. App. 550, 307 S.E.2d 575 (1983); *Jones v. Jones*, 62 N.C. App. 748, 303 S.E.2d 582 (1983); *Teachey v. Teachey*, 46 N.C. App. 332, 264 S.E.2d 786 (1980); *Frank v. Glanville*, 45 N.C. App. 313, 262 S.E.2d 677 (1980); *Cox v. Cox*, 10 N.C. App. 476, 179 S.E.2d 194 (1971).

CAPRICORN EQUITY CORP. v. TOWN OF CHAPEL HILL

[334 N.C. 132 (1993)]

[2]   At the outset of a civil contempt proceeding for nonsupport, the trial court should assess the likelihood that the defendant may be incarcerated. If the court determines that the defendant may be incarcerated as a result of the proceeding, the trial court should, in the interest of judicial economy, inquire into the defendant's desire to be represented by counsel and into his ability to pay for legal representation. If such a defendant wishes representation but is unable due to his indigence to pay for such representation, the trial court must appoint counsel to represent him.

For the foregoing reasons, we conclude that the trial court erred by ordering that the defendant be incarcerated for civil contempt without the benefit of appointed counsel to represent him at the hearing resulting in his incarceration. Accordingly, the decision of the Court of Appeals affirming the order of the trial court is reversed.

Reversed.