GLENDA L. SHUMAKER, Plaintiff v. GEORGE R. SHUMAKER, Defendant

No. COA99-197

(Filed 21 March 2000)

**1. Divorce— alimony pendente lite—willful failure to comply—contempt**

The trial court did not err in a contempt action arising from failure to pay alimony pendente lite by determining that defendant was able to comply with the temporary alimony order but did not do so willfully, deliberately, and without justification. Although the defendant argued that courts must make particular findings of ability to pay in order to find failure to pay willful, the court concluded that defendant's assertions that his income and earning capacity had decreased were not credible and thus implicitly found that he possessed the means to comply and willfully refused to do so. Moreover, defendant did not provide information as to his personal checking account although those documents were subpoenaed and failed to furnish an affidavit of financial standing, thus failing to meet his burden proof.

**2. Divorce— alimony pendente lite—contempt—attorney's fees**

The trial court did not abuse its discretion in awarding attorney's fees to plaintiff in a contempt action arising from defendant's failure to pay alimony pendente lite. The court found that plaintiff had an interest in enforcing the temporary alimony order, acted in good faith in pursuing her motion for contempt and defending defendant's modification request, and had inadequate funds to defray the expense of the suit; that the amount of time plaintiff's attorney devoted to the matter was reasonable; and made a finding as to the reasonable value of the attorney's services. Although the record does not contain explicit findings as to the value of defendant's estate, the court's findings indicate that it considered defendant's financial situation and the reasonableness of the fees.

Judge GREENE dissenting in part.

Appeal by defendant from judgment entered 4 November 1998 by Judge James M. Honeycutt in Davidson County District Court. Heard in the Court of Appeals 16 November 1999.

**SHUMAKER v. SHUMAKER**

[137 N.C. App. 72 (2000)]

*Wilson, Biesecker, Tripp & Sink, by Max R. Rodden, for plaintiff-appellee.*

*Metcalf & Beal, L.L.P., by Christopher L. Beal, for defendant-appellant.*

WALKER, Judge.

On 4 January 1994, the trial court granted plaintiff's motion for alimony *pendente lite*. Seeking to enforce this order, plaintiff filed a motion for contempt on 25 March 1998. On 31 March 1998, the trial court entered an order for defendant to show cause, if any, as to why he should not be adjudged in willful contempt. Defendant filed a motion on 1 April 1998 to terminate or modify his obligation to pay alimony *pendente lite* to plaintiff. On 4 November 1998, the trial court entered an order which denied defendant's motion to terminate or modify temporary alimony, found defendant in contempt for failing to comply with the temporary alimony order, and awarded plaintiff legal fees and costs to defray her expenses in the action.

The trial court's findings in its 4 November 1998 order included the following:

3. Through September 3, 1998 the defendant was in arrears $4,760.00 in alimony. The defendant paid an amount of ad valorem taxes in 1996 to offset his obligation to pay the 1997 and 1998 ad valorem taxes on the real estate where the plaintiff's residence is located . . . and to offset his alimony arrearage by $204.00. The total amount necessary to bring the mortgage loan to a current status as of September 1998 is $12,038.67.

. . .

5. . . . The defendant's accountant furnished financial statements he prepared for the defendant's business, Shumaker Body Repair, Inc. The only information the accountant had available to him to use in preparing the financial statements was information furnished by the defendant, and the only verification of this information was bank statements. The defendant changed accountants some time in 1997. Detailed information is available from only August 1997 onward from which the accountant testified to the gross income, expenses, net income, and cash on hand of the corporation for 1998 but he did not do an audit of the defendant or his corporation. The accountant admitted that some of the defendant's financial statements presented in evidence through

his accountant were in error, and the errors had to be corrected during the course of the accountant's testimony.

6. The accountant testified that the defendant took no salary during 1998.

7. The defendant is in arrearage on federal income taxes. The defendant is making monthly payments to the Internal Revenue Service (hereinafter "IRS") for income tax arrearage for taxes that go back to 1987, 1990, 1992, 1993, and 1994. The tax arrearage may be in excess of $20,000.00 but the arrearage arose from the defendant's failure to pay taxes when due in those years.

8. . . . The defendant states that he has gotten as much as $21,000.00 in "loans" from "a friend" who was identified under cross-examination as his girlfriend who is "retired." The defendant does not know the exact amounts of such loans or when they were made. They were made without any promissory notes or terms of repayment. The defendant testified that he "couldn't keep up with" the large sums of money he paid to the Internal Revenue Service such as his $11,000.00 payment to the Internal Revenue Service in February 1998. He was not sure if he got the money in cash or otherwise. The defendant was unclear as to whether he deposited as much as $10,000.00 in cash to bank accounts at any one time.

9. The defendant drives a vehicle which is registered in his son's name to avoid seizure by the IRS.

10. The defendant did not provide information as to his personal checking account although such documents were subpoenaed. He only furnished documents regarding the corporate account.

11. The defendant did not furnish an affidavit of financial standing as did plaintiff.

12. The defendant is in the business of painting trucks and trailers. Since the entry of the previous temporary alimony order, the defendant incorporated his business with the defendant as a sole stockholder. The business conducted by the corporation is the same as the defendant's sole proprietorship before the prior order. The defendant has been in business many years in the same business regardless of whether acting through a corporation or as a sole proprietor.

13. The defendant was vague on his efforts to supplement his income with business from other than his regular customers. The defendant is also a certified mechanic. He made no efforts to supplement his income with mechanic work. Although the defendant is not found to have intentionally depressed his income, he is indifferent to fluctuations in the income of his truck painting business, if in fact, such fluctuations [exist].

14. Based on the financial information for years from 1993 to 1998, the defendant has essentially the same earning capacity as when the previous order was entered. Considering the testimony and exhibits of the defendant and observing his demeanor, especially considering his ability to obtain large sums of cash, supposedly from his girlfriend, and his inability to accurately recall the details of these "loans" or provide any documentation of them, the court simply does not believe the defendant's assertions that his income and earning capacity have decreased. The defendant has the burden of proof on his motion to modify alimony.

. . .

20. Mr. Rodden devoted 46.25 hours to representing the plaintiff on the contempt and modification proceeding. This amount of time is reasonable and the activities of Mr. Rodden were reasonably required for representation of the plaintiff in this matter.

21. The reasonable value of legal services rendered by plaintiff's counsel to plaintiff in this matter is $4,625.00. Associated costs total $59.06.

Based on these findings, the trial court concluded that the "defendant failed to show by the greater weight of the evidence that there has been a change in circumstances related to the factors that the court must consider in setting or modifying alimony." The trial court further concluded that defendant is "sufficiently able to comply with the temporary alimony order, but he has wilfully, deliberately, and without justification failed to comply with the order, and is [in] contempt of this court."

Based on its findings and conclusions, the trial court ordered that defendant be held in contempt until he paid certain sums of money, including plaintiff's attorney fees.

Defendant sets forth two assignments of error: (1) that the trial court erred in determining that defendant was sufficiently able to comply with the temporary alimony order but willfully, deliberately, and without justification failed to comply with the order; and (2) that the trial court erred in awarding plaintiff attorney fees.

**[1]** "Civil contempt proceedings are initiated by a party interested in enforcing the order by filing a motion in the cause." *Plott v. Plott,* 74 N.C. App. 82, 85, 327 S.E.2d 273, 275 (1985). "The motion must be based on a sworn statement or affidavit from which the court determines there is probable cause to believe there is civil contempt." *Id.*; *see* N.C. Gen. Stat. § 5A-23(a) (Cum. Supp. 1998). The burden then moves to the opposing party to show cause why he should not be found in contempt of court. *Id.* The party alleged to be delinquent has the burden of proving either that he lacked the means to pay or that his failure to pay was not willful. *Plott,* 74 N.C. App. at 85-86, 327 S.E.2d at 275; *see Hartsell v. Hartsell,* 99 N.C. App. 380, 387, 393 S.E.2d 570, 575 (1990), *affirmed,* 328 N.C. 729, 403 S.E.2d 307 ·(1991) (holding that "[i]n civil contempt the defendant has the burden of presenting evidence to show that he was not in contempt and the defendant refuses to present such evidence at his own peril") and *Belcher v. Averette,* 136 N.C. App. 803, 526 S.E.2d 663 (2000) (holding that the defendant was properly held in contempt since he failed to carry his burden of proving that he was unable to pay or that he did not act willfully in failing to pay the child support arrearages); *see also McBride v. McBride,* 334 N.C. 124, 431 S.E.2d 14 (1993) (holding that "absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages" since indigent defendants are often unaware they "could avoid imprisonment if they showed that they were unable to pay" and "many such defendants would not know how to prove their inability to pay").

Defendant cites this Court's decision in *Goodson v. Goodson,* 32 N.C. App. 76, 231 S.E.2d 178 (1977), for the proposition that courts are required to make "particular findings" of ability to pay in order to find the failure to pay was willful. This Court, however, in *Plott v. Plott,* 74 N.C. App. 82, 327 S.E.2d 273 (1985), held that although explicit findings are preferable, they are not absolutely essential where the findings otherwise indicate that a contempt order is warranted. An order is sufficient if it is implicit in the court's findings that the delinquent obligor both possessed the means to comply and willfully refused to do so. *Id.*

## SHUMAKER v. SHUMAKER

[137 N.C. App. 72 (2000)]

When reviewing a trial court's contempt order, the appellate court is limited to determining whether there is competent evidence to support the trial court's findings and whether the findings support the conclusions. *Adkins v. Adkins*, 82 N.C. App. 289, 346 S.E.2d 220 (1986). Here, defendant is the sole stockholder of Shumaker Body Repair, Inc., which is the same business defendant owned as a sole proprietor prior to the entry of the temporary alimony order. Based on defendant's financial information for years 1993-1998, the trial court found that defendant has the same income or earning capacity as when the alimony *pendente lite* order was entered. The trial court also noted that during the hearing, defendant was vague as to his efforts to supplement his income with business from other than his regular customers and determined that although defendant may not have intentionally depressed his income, "he is indifferent to fluctuations in the income of his truck painting business, if in fact, such fluctuations [exist]."

In *Frank v. Glanville*, 45 N.C. App. 313, 262 S.E.2d 677 (1980), this Court held that a person may be guilty of civil contempt, even if he does not have the money to make court ordered payments, if he could take a job which would enable him to make those payments and he fails to do so. In the case at bar, the trial court found that although defendant is a certified mechanic, he has made no effort to supplement his income with mechanic work. The trial court emphasized that defendant had the "ability to obtain large sums of cash, supposedly from his girlfriend" but was unable to "accurately recall the details of these 'loans' or provide any documentation of them." Defendant also testified that he "couldn't keep up with" the large sums of money he had paid to the IRS, which included a $11,000.00 payment in February 1998. Based on these findings, the trial court concluded that defendant's assertions that his income and earning capacity have decreased were not credible. Thus, it is implicit in the court's findings that defendant both possessed the means to comply and willfully refused to do so.

The trial court further noted in its findings that defendant did not provide any information as to his personal checking account although the documents were subpoenaed and that he failed to furnish an affidavit of financial standing. While defendant's accountant furnished financial statements he had prepared for defendant's business, defendant failed to provide any detailed information for the time period prior to August 1997, and the accountant admitted that some of defendant's financial statements were erroneous.

SHUMAKER v. SHUMAKER

[137 N.C. App. 72 (2000)]

Therefore, defendant failed to meet his burden of proof of establishing that he lacked the means to pay or that his failure to pay was not willful.

The case of *Lamm v. Lamm*, 229 N.C. 248, 49 S.E.2d 403 (1948), cited by the dissent, did not address the issue of who has the burden of proof in a civil contempt proceeding. In *Lamm*, the plaintiff offered evidence that the defendant had failed to comply with the court's order. *Id.* at 249, 49 S.E.2d at 404. The defendant then came forward with evidence that he was out of the county and the State when the original order was entered on 7 February 1948 and did not have notice of the order until he was served with a show cause order on 30 April 1948. *Id.* Defendant also presented evidence that he was working for the State Highway Commission at the present time but that he had only worked for them for two weeks, having received only $25.00 from said employment. *Id.* Additionally, defendant testified that he does not own any property nor have any money with which to comply with the order. *Id.* Based on the evidence presented by the defendant, our Supreme Court found that the trial court erred in finding that the defendant willfully disobeyed the court order. *Id.* at 250, 49 S.E.2d at 404.

[2] Defendant next contends that the trial court erred in awarding plaintiff attorney fees, since it was required to consider defendant's estate and ability to defray legal costs under *Perkins v. Perkins*, 85 N.C. App. 660, 355 S.E.2d 848, *cert. denied*, 320 N.C. 633, 360 S.E.2d 92 (1987), and failed to do so. In *Perkins*, this Court stated:

A trial court is authorized to award attorney's fees to a party who has shown that she is entitled to the relief demanded, is a dependent spouse, and lacks sufficient means upon which to live during the prosecution of the suit and to defray her necessary legal expenses. Once fees are authorized, a trial court must consider several factors in determining the amount of the award, including but not limited to: each party's estate and ability to defray legal costs; the nature and scope of the legal services rendered the dependent spouse; and the skill, time, and labor expended during such representation.

*Id.* at 668, 355 S.E.2d at 853. However, the amount of an award of attorney's fees rests within the sound discretion of the trial court and is reviewable on appeal only for abuse of discretion. *Stickel v. Stickel*, 58 N.C. App. 645, 294 S.E.2d 321 (1982).

**SHUMAKER v. SHUMAKER**

[137 N.C. App. 72 (2000)]

Here, the trial court found that plaintiff had an interest in enforcing the temporary alimony order, acted in good faith in pursuing her motion for contempt and defending the defendant's modification request, and had inadequate funds to defray the expense of the suit. The trial court also found that plaintiff's attorney devoted 46.25 hours to representing plaintiff in this matter and that this amount of time was reasonable. Further, the reasonable value of plaintiff's attorney's legal services in this matter was $4,625.00, and the associated costs totaled $59.06. Although the record before this Court does not contain explicit findings as to the value of defendant's estate, in *Plott*, 74 N.C. App. 82, 327 S.E.2d 273 (1985), this Court found that such findings were not required in an order awarding attorney's fees where there was no conflicting evidence and the facts were obvious. Since the trial court's findings here indicate that it considered defendant's financial situation and the reasonableness of the attorney's fees, we cannot find that the trial court abused its discretion in awarding attorney's fees to plaintiff.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents in part with separate opinion.

Judge GREENE dissenting in part.

I disagree with the majority that the party alleged to be delinquent in an action for civil contempt has the *burden of proving* his failure to make payments in compliance with a court order was not willful. I, therefore, respectfully dissent on this issue.

*Civil or Criminal Contempt*

Because of differences in " 'procedure, punishment, and right of review' " in actions for civil and criminal contempt, this Court must first determine when reviewing a contempt order whether the order evidences an adjudication of civil or criminal contempt. *Bishop v. Bishop*, 90 N.C. App. 499, 503, 369 S.E.2d 106, 108 (1988) (quoting *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985)). In this case, plaintiff's motion for contempt and the trial court's contempt order do not state whether plaintiff's contempt action is criminal or civil. I, however, agree with the majority that the order is for civil contempt. This is because the order allows the defendant to

purge himself of contempt and be released from custody by paying funds into the court, and any funds paid into the court will be disbursed to plaintiff's attorney rather than to the court.[1] *See Bishop*, 90 N.C. App. at 505, 369 S.E.2d at 109 (order for contempt is civil if the contemnor may "avoid or terminate his imprisonment by performing some act required by the court" and any funds paid by contemnor are disbursed to the movant rather than the court).

### Burden of Proof in Civil Contempt

In *McBride v. McBride*, the North Carolina Supreme Court stated civil contempt proceedings are criminal in nature because a civil contempt hearing may "result in the incarceration of a[] . . . [contemnor] who is without the means to procure his release and who, absent those means, may be incarcerated for an indeterminate period of time." *McBride v. McBride*, 334 N.C. 124, 130, 431 S.E.2d 14, 19 (1993). The *McBride* court stated that when contemnor "is jailed pursuant to a civil contempt order which calls upon him to do that which he cannot do[,] . . . the deprivation of his physical liberty is no less than that of a criminal defendant who is incarcerated upon conviction of a criminal offense." *Id.* at 131, 431 S.E.2d at 19. It follows a contemnor who is incarcerated based on a civil contempt order is entitled to protections afforded alleged contemnors in actions for criminal contempt. When a show cause order has been issued in an action for criminal contempt, the *burden of proof* is on the party initiating the contempt action to prove the alleged contemnor is in contempt. *See* N.C.G.S. § 5A-15(e), (f) (1999). I, therefore, would hold the party initiating an action for civil contempt has the *burden of proving* the elements of civil contempt, including that the alleged contemnor's noncompliance with the court order was willful.

Even if a civil contempt proceeding is not to be treated like a criminal contempt proceeding, I do not read the case law in this

---

1. Although this Court is able to review proceedings in the trial court to determine whether an action was for civil or criminal contempt, it is the better practice for the trial court to require the movant to provide an alleged contemnor with notice of whether an action is for civil or criminal contempt. *See Hartsell v. Hartsell*, 99 N.C. App. 380, 395, 393 S.E.2d 570, 579 (Greene, J., dissenting) ("Allowing movant or the trial court to choose between civil contempt or criminal contempt based on evidence adduced during the course of trial does not provide the alleged contemnor reasonable notice and does not give him adequate opportunity to prepare and defend the action."), *appeal dismissed and disc. review denied*, 327 N.C. 482, 397 S.E.2d 218 (1990), *aff'd per curiam*, 328 N.C. 729, 403 S.E.2d 307 (1991). An alleged contemnor, therefore, should object if the notice of hearing does not specify the type of contempt order sought by the movant.

**SHUMAKER v. SHUMAKER**

[137 N.C. App. 72 (2000)]

State to place the *burden of proof* on the alleged contemnor in a civil contempt proceeding. The trial court is required, prior to the entry of an order of civil contempt, to "find as a fact that the [alleged contemnor] presently possesses the means to comply [with the underlying order]." *Henderson v. Henderson*, 307 N.C. 401, 408, 298 S.E.2d 345, 350 (1983); *Lamm v. Lamm*, 229 N.C. 248, 250, 49 S.E.2d 403, 404 (1948) (contempt order set aside because "no testimony was presented . . . to establish as an affirmative fact that [the alleged contemnor] possessed the means . . . to comply with the order"). That finding must be supported by evidence in the record. *Henderson*, 307 N.C. at 409, 298 S.E.2d at 351. If the finding is not made or if made and there is no evidence to support the finding, the order of contempt "must be set aside." *Id.* It, thus, follows there exists an affirmative duty on some party to present evidence the alleged contemnor has the present ability to comply with the underlying order and that duty necessarily rests with the movant.[2]

I acknowledge there are several cases, relied on by the majority, stating the alleged contemnor has the *burden of proof* in a civil contempt proceeding. Those cases, however, are inconsistent with the unequivocal teachings of *Henderson* and thus are not controlling.[3] *See State v. Adams*, 132 N.C. App. 819, 821, 513 S.E.2d 588, 589 (court of appeals must follow decisions of supreme court), *disc. review denied*, 350 N.C. 836, —— S.E.2d ——, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 414 (1999). In any event, I believe those cases simply place the *burden of production* on the alleged contemnor in a civil contempt proceeding, not the *burden of proof. See Hartsell v. Hartsell*, 99 N.C. App. 380, 387, 393 S.E.2d 570, 575 ("In civil contempt the

---

2. If the duty to present evidence was placed on the alleged contemnor and he failed to present any evidence, there would be no evidence in the record to support the entry of an order of contempt.

If the issuance of a show cause order in a civil contempt proceeding gave rise to a presumption, the alleged contemnor would have the burden of producing evidence "sufficient to permit reasonable minds to conclude that the presumed fact [did] not exist." N.C.G.S. § 8C-1, Rule 301 (1999). If he failed to meet his burden of producing evidence, "the presumed fact [would] be deemed proved." *Id.* Although there is no case law addressing the existence of a presumption in the context of civil contempt, the *Henderson* case implicitly rejects its existence. That court specifically held evidence was necessary to support the order of contempt and, had the movant been entitled to the benefit of the presumption, no evidence would have been required to support the order.

3. In addition to opinions from the Court of Appeals, the majority also cites *McBride* in support of its holding that the alleged contemnor has the *burden of proof* in a civil contempt proceeding. *McBride* does not reach the issue of who has the *burden of proof* in a civil contempt proceeding.

[alleged contemnor] has the burden of presenting evidence to show that he was not in contempt and [he] refuses to present such evidence at his own peril."), *appeal dismissed and disc. review denied*, 327 N.C. 482, 397 S.E.2d 218 (1990), *aff'd per curiam*, 328 N.C. 729, 403 S.E.2d 307 (1991).

In this case, the trial court consolidated for hearing defendant's motion to modify temporary alimony and plaintiff's motion for contempt. The trial court's order combines its findings of fact and conclusions of law for both motions, and it is impossible to determine from the trial court's order on which party it placed the burden of proof for plaintiff's motion for contempt. I, therefore, would remand this case to the trial court for a new hearing on plaintiff's motion for contempt, with the burden of proof on the movant plaintiff.