An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-209

Filed 19 November 2025

Guilford County, No. 20 CVD 002841-400

GRADY W. BENDEL, JR., Plaintiff,

v.

PEPPER BENDEL, Defendant.

Appeal by Defendant from order entered 16 January 2024 by Judge Tabatha Holliday in Guilford County District Court. Heard in the Court of Appeals 27 August 2025.

> *Morrow, Porter, Vermitsky and Taylor, PLLC, by John C. Vermitsky and Rebecca Costello, for Plaintiff–Appellee.*
>
> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender Jacky Brammer, for Defendant–Appellant.*

MURRY, Judge.

Pepper Bendel (Defendant) appeals the trial court's 16 January 2024 order finding her in civil contempt. For the reasons below, this Court (1) dismisses as void Defendant's purported stipulation to contempt, (2) affirms the trial court's adjudication of contempt, and (3) affirms the trial court's award of attorneys' fees, but (4) remands for further factfinding on Plaintiff's means to defray the cost of this

action.

## I.    Background

Grady W. Bendel, Jr. (Plaintiff) and Defendant married in 2004, had two minor children, and divorced in 2020. On 29 January 2021, Plaintiff and Defendant signed a consent order, in which Defendant agreed to pay Plaintiff $451 in monthly child support and for one-half of the children's uninsured living expenses (First Order). Defendant also stipulated to telemarketing employment with an approximate monthly income of $1,750.

On 7 March 2022, the parties entered into a second consent order that awarded Plaintiff sole custody of their children (Second Order). In the Second Order, the trial court found that Plaintiff was an "interested party acting in good faith," without "adequate funds . . . to pay the expenses" of his counsel's representation; thus, the trial court awarded Plaintiff attorneys' fees against Defendant. On 22 December 2022, Plaintiff moved for contempt, attorneys' fees, and a show-cause order. Plaintiff's motion also requested that the trial court hold Defendant her in contempt for failure to comply with the prior Orders, and award Plaintiff "additional" attorneys' fees and costs "incurred and necessitated by" that "willful contempt." That same day, the trial court ordered Defendant to appear at a show-cause hearing on 3 January 2023.

The trial court continued the show-cause hearing date five times over the following year. After the final continuance on 25 September 2023, the trial court ordered Defendant to (1) pay Plaintiff $1,000 by 29 September 2023 and an additional

$1,000 by 6 October 2023, (2) complete and document a 60-place job search, (3) comply with Plaintiff's subpoena issued six months prior for tax returns and other financial documents, and (4) resume her mandatory child-support payments going forward (Third Order).

On 14 November 2023, the trial court held the show-cause hearing with both Plaintiff and Defendant present and represented by counsel. At the hearing, Defendant's counsel informed the trial court that Defendant had remitted to Plaintiff a $6,033.09 cashier's check "in full compliance with the current arrears . . . due" as of that day. The trial court confirmed that the check would bring Defendant "in compliance of the past[-]due or early arrears" through November 2023. Defendant's counsel also reported that Defendant had tax returns to present in compliance with Plaintiff's subpoena and that she had made a "good[-]faith effort to get employment" by interviewing for a job and expecting to start work there. He then conveyed Defendant's "stipulat[ion] to contempt." The trial court confirmed that it would "make a finding that she stipulates to contempt."

On 16 January 2024, the trial court entered a contempt order with findings of fact (FoF) across a broad swath of record subject matter (Contempt Order). Regarding Defendant's repeatedly late payment of her required child-support expenses, the Contempt Order documented that:

9. Defendant ultimately made the $1,000 payments listed above after their due dates. After applying this $5,000 to her past-due child support, Defendant still owes Plaintiff $1,468 as of today's hearing

and has another $451 child-support payment due 1 December 2023.
. . . .

15.  Defendant failed to pay the $1,000 payments due under the Third Order on 6 October 2023, to complete a 60-place job search and provide documentation, and to comply with the subpoena.

16.  Defendant stated she was last employed full time in October 2021. The Court does not find this statement credible, since Defendant was employed in 2020 at the time the Second Order was signed and was employed at least in 2021.

17.  Defendant does not report full-time employment, has not started a job, and has the ability to be fully employed, but has not worked since leaving her full-time employment in October 2021.

18.  Defendant is capable of earning sufficient income to provide support for the parties' two minor children. Defendant also worked for a telemarketing firm at the time of the First Order and earned an average monthly income of $1,750. Defendant also received $31,000 from Plaintiff as part of their 2021 Equitable Distribution settlement.

19.  After months of not paying, Defendant has come up with two large sums through the help and assistance of her significant other to catch up on child support.
. . . .

31.  Defendant has the means and ability to pay an award of additional attorneys' fees that Plaintiff has incurred to enforce compliance with the First, Second, or Third Orders of the Court. The amount of $6,500 is reasonable for attorneys' fees for Defendant to pay to Plaintiff related to enforcing these Orders of the Court.

(Quotation modified.) Regarding Defendant's repeated noncompliance with court orders to-date, the Contempt Order also documented that:

21.  Defendant has not taken reasonable steps to comply with the Previous Orders.

22.  Defendant's actions have been willful and without legal justification or excuse. As of the previous Orders and now, Defendant has the means and ability to comply or to take reasonable steps to comply with them.

23.  The previous Orders are valid court orders that remain in full force

and effect, the purpose of which may still be served by compliance with them.

24. Defendant violated the First Order by willfully failing to timely pay her regular monthly child-support payments to Plaintiff, and by willfully failing to pay her portion of uninsured medical expenses incurred by Plaintiff on behalf of their two minor children.

25. Defendant violated the Second Order by willfully failing to pay attorneys' fees as ordered by the Court.

26. Through the help and assistance of her significant other, Defendant delivered a cashier's check in the amount of $6,033.09 in full payment of the total past-due and current child support and attorneys' fee payments due as of today.

. . . .

27. Defendant violated the Third Order by failing to complete a 60-place job search and provide documentation, by refusing to pay the child support payments ordered by the Court, and by refusing to comply with the subpoena attached to the Third Order.

28. Defendant stipulates to civil contempt of the First Order, the Second Order, and the Third Order of the Court.

(Quotation modified.)

Based on these findings, the trial court held Defendant in civil contempt and sentenced her to 30 days in custody, suspended for 12 months. The Contempt Order required Defendant to meet five purge conditions:

(1) Pay $6,500 to Plaintiff's counsel by 15 January 2024 for "additional" attorneys' fees incurred through the show-cause hearing date;

(2) Comply with Plaintiff's subpoena by 15 December 2023;

(3) Complete the 60-place job search and obtain full-time employment, along with "documentation evidencing her gross income," before 16 January 2024;

(4) Remit regular child-support and attorneys' fees payments "for the next twelve . . . months," as well as her portion of the minor children's uninsured living expenses; and

(5) Remain employed full-time for "the next twelve . . . months."

Defendant timely appealed the Contempt Order to this Court.

## II.    Jurisdiction

Although the Contempt Order is interlocutory, this Court has jurisdiction to hear Defendant's appeal because a contempt order "affects a substantial right and is immediately appealable." *Blanchard v. Blanchard*, 279 N.C. App. 280, 283 (2021); *accord* N.C.G.S. § 5A-24 (2025).

## III.    Analysis

Defendant urges this Court to reverse the Contempt Order for the following reasons: (1) Defendant did not effectively stipulate to contempt; (2) no competent evidence supports any of the trial court's substantive findings;[1] and (3) the trial court failed to make required findings to support its award of attorneys' fees to Plaintiff. Alternatively, Defendant requests reversal of the Contempt Order because its purge conditions hold her in contempt "indefinitely."

We review contempt proceedings for "whether competent evidence supports the findings of fact and whether those findings support the conclusions of law." *Blanchard*, 279 N.C. App. at 284. Findings supported by "admitted evidence . . . bind[

---

[1]    Defendant challenges the findings of fact (FoF) as a whole on two separate grounds. First, she contends that the trial court failed to conduct a proper show-cause hearing by "receiv[ing] no evidence." Because she did not object to this alleged failure at the hearing, this argument is not preserved for our review. *See* N.C. R. App. P. 10(a)(1). Second, she claims that no competent evidence supports any of the FoFs; rather, the only "valid and supported" "substantive findings" in the Contempt Order "are ones about the *existence* of the allegations" in the three prior Orders. Defendant similarly attempts a sweeping denial of *all* other findings but fails to specifically argue certain ones that would be material, *e.g.*, FoFs #15, #21–#25, #27–#28, and #31. We consider these latter assignments of error unchallenged and thus abandoned. *See id.* 28(a).

us] on appeal even if the weight of the evidence might sustain findings to the contrary." *Id.* (quotation omitted). We review the trial court's findings of fact "only for . . . sufficiency to warrant the judgment." *Hartsell v. Hartsell*, 99 N.C. App. 380, 385 (1990). Unchallenged findings of fact are "presumed to be supported by competent evidence and are binding on appeal." *Servatius v. Ryals*, 263 N.C. App. 213, 216 (2018) (quotation omitted). We review the trial court's conclusions of law *de novo. Blanchard*, 279 N.C. App. at 284. For the following reasons, this Court (1) dismisses as void Defendant's purported stipulation to contempt, (2) affirms the trial court's adjudication of contempt,[2] and (3) affirms the trial court's award of attorneys' fees, but (4) remands for further factfinding on Plaintiff's means to defray the cost of this action.

## A. Improper Stipulation

First, Defendant argues that the trial court reversibly erred by allowing her

---

[2] Although affirming in Plaintiff's favor, we admonish Plaintiff for submitting a brief that so "frustrate[d] the review process" with typographical and citational errors as to risk reversal per se. *Dillingham v. N.C. Dep't of HR*, 132 N.C. App. 704, 707 (1999) (citing N.C. R. App. P. 28(b), app. E). At one point, it purports to quote *State v. Bell*, 359 N.C. 1, 28 (2004), for the proposition that "a stipulation relating to a pending judicial proceeding, made bya partyto the proceeding **or the party's attorney**, [sic] is binding without consideration." Plaintiff–Appellee's Brief, *Bendel v. Bendel*, COA25-509, 2025 WL 1485349, at *4 (N.C. Ct. App. Nov. 19, 2025). This language is found nowhere in the *Bell* opinion.

The *Table of Contents* also describes an unrelated case this Court recently adjudicated in an entirely different panel. *Compare id.* at *i, *with* Plaintiff–Appellee's Brief, *Premier Athlete Advisors, LLC v. Entersports MGT, LLC*, COA25-81, 2025 WL 1287053, at *i (N.C. Ct. App. Nov. 5, 2025). The law here is too settled to countermand the trial court on so secondary a rationale. But our conclusion in Plaintiff's favor does not vitiate in any way his obligation both here and going forward "to define *clearly* the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely." N.C. R. App. P. 28(a) (emphasis added).

invalid stipulation to contempt. Parties may "establish by stipulation any material fact that has been in controversy between them," and trial courts will regard stipulated facts as "binding" "judicial admissions." *Thomas v. Poole*, 54 N.C. App. 239, 241 (2013). But parties generally cannot "stipulat[e] as to questions of law." *Spoon v. Spoon*, 233 N.C. App. 38, 43 (2014). The trial court must reach conclusions of law to determine civil contempt. *See* N.C.G.S. § 5A-23(a); *id.* § 5A-21(a). But "an appellate court . . . should not[ ] assume error by the trial judge when none appears on the record." *State v. Williams*, 274 N.C. 328, 333 (1968).

Here, Defendant's counsel stated that Defendant "stipulate[d] to contempt," and the trial court accepted this purported stipulation. But only FoF #28 referenced this attempted stipulation. The trial court's other 31 findings of fact do not "indicat[e] that the trial court sought to avoid its obligation" to make sufficient findings of fact to hold Defendant in civil contempt. *Spoon*, 233 N.C. App. at 43. Even assuming error, Defendant cannot show that this error merits reversal of the Contempt Order. *See* N.C. R. Civ. P. 61. Thus, this Court dismisses as void Defendant's purported stipulation to civil contempt.

## B. Preserved Assignments of Error

Second, Defendant argues that no competent evidence supports the Contempt Order's findings as described in FoFs #9, #15–#19, #21, #26, and #28. Aside from two exceptions regarding Defendant's "cosmetology license" and "significant other," this Court disagrees and holds that competent evidence supports these particular FoFs.

### 1. *Nonpayment*

Defendant claims that the trial court based its "findings as to past amounts, payments, dates, and the like . . . on nothing in the record." We disagree because the contrast between past continuances and the 14 November 2023 check implies the opposite. The stated reasons for the five continuances between 5 January and 14 November 2023 range from the "agreement of [the] parties" to a direct order that Defendant "make the following payments" in regular $1,000 increments. But Defendant also confirms full payment of the outstanding $6,033.09 she had yet to remit up to the date of the show-cause hearing. This lump-sum payment could only occur after repeated failure to pay child support on time. Thus, competent evidence supports the trial court's findings regarding Defendant's repeated nonpayment of child support prior to the hearing.

### 2. *Employment History and Payment Capacity*

Defendant next claims that, besides an isolated "stipulat[ion] to . . . employ[ment] as a telemarketer in 2020," no competent evidence supports the findings related to her "employment, ability to work, or the 'credibility' of her work history." We largely disagree.

A "trial court may take judicial notice of earlier proceedings in the same cause," including those issues in the record not formally offered into evidence. *In re Isenhour*, 101 N.C. App. 550, 553 (1991); *accord* Bryan A. Garner et al., *The Law of Judicial Precedent* 442 (2016) (articulating "law-of-the-case doctrine"). If a trial court "ma[d]e

it plain that it had reviewed the record and "consider[ed] the history of the case [whe]n conducting [a] hearing" at issue, then we may presume that the trial court's resulting order stems from this judicial assessment. *Isenhour*, 101 N.C. App. at 553; *see Shumaker v. Shumaker*, 137 N.C. App. 72, 76 (2000) (upholding order as sufficient based on rationale "implicit in the court's findings," "although explicit findings are preferable").

At the show-cause hearing, the trial court here noted the continued effect of the First and Second Orders and Defendant's failure to comply with either one. In the First Order, Defendant stipulated to her employment at a telemarketing firm as of 29 January 2021, with an average monthly income of $1,750. In the Second Order, the trial court found that "[b]oth parties [we]re capable of complying" with the ordered child-support payments based in part on these prior determinations. And at the show-cause hearing itself, Defendant's counsel mentioned her job interview, the likelihood of her upcoming employment, and her "tax returns to present for W-2s or 1099s for 2021 and 2022." Her counsel's statements contradict the portion of FoF #16 finding that Defendant "did not file an income tax return" between 2020 and 2022 "and did not have any paystubs, W-2s, 1099s, or other documents." The "credibility and weight" of this discrepancy "remain in the province of the finder of facts"—here, the trial court. *Scott v. Scott*, 336 N.C. 284, 291 (1994). Thus, competent evidence supports the trial court's findings that Defendant had gainful employment through at least 2021 based on her telemarketing job, average income, and projected

employment.

### 3. *Cosmetology License*

Defendant challenges FoFs #17–#18 as lacking anything in the record to support her having a cosmetology license. Although the trial court found that Defendant "possibly has a cosmetology license that could be utilized" and that she "is a licensed cosmetologist," the record lacks any other reference to these conclusory statements. Thus, this Court cannot find competent evidence to completely support FoFs #17 or #18 and vacates them to the extent that they rely on these cosmetology-related assertions.

### 4. *Significant Other*

Defendant also challenges FoFs #19 and #26, claiming that "the judge's allusions" to a " 'significant other' or anyone [else] handling [her] finances" lack any supporting record evidence. In reaching these two FoFs, the trial court alluded to "the help and assistance of [a] significant other" in Defendant's ability to pay her overdue child support at the hearing. Beyond a single reference to a "current partner" in the Second Order, the record omits any reference to a spouse or other life partner. Thus, this Court vacates FoFs #19 and #26 to the extent that they rely on the existence of Defendant's supposed "significant other."

## C. Contempt Adjudication

Third, Defendant challenges the ultimate facts in the Contempt Orders, which document her willful noncompliance with prior Orders. *Woodard v. Mordecai*, 234

N.C. 463, 472 (1951) (defining as conclusory facts "reached by processes of logical reasoning from . . . evidentiary facts" (quoting 64 C.J. *Trials* § 1151 (1933))). Even without the stricken portions of the FoFs listed above, competent evidence supports these remaining facts and the consequent adjudication of Defendant's civil contempt. Thus, this Court affirms the Contempt Order to the extent that it documents Defendant's conduct to-date and binds her going forward.

### 1. Ultimate Facts

To hold a party in civil contempt, a trial court must find that:

(1) The prior order "remains in force";
(2) The order's purpose "may still be served by compliance";
(3) The contemnor's "noncompliance . . . is willful;" and
(4) The contemnor can either "comply with the order or . . . take reasonable measures" to do so.

*Maxwell v. Maxwell*, 212 N.C. App. 614, 619 (2011) (quoting N.C.G.S. § 5A-21(a) (2017)). For child-support-payment proceedings, the trial court must find that a defendant willfully "fail[ed] to comply with the child[-]support order" despite a "present ability to pay." *Cumberland Cty. ex rel. Mitchell v. Manning*, 262 N.C. App. 383, 389 (2018). To determine the defendant's "ability to pay," the trial court considers "two periods of time: (1) the period of time the [defendant] did not pay child support; and (2) the date of the hearing, *i.e.*[,] the present ability to comply." *Id.* A defendant's "ability to comply includes the present ability to take reasonable measures that would enable [her] to comply." *Hartsell*, 99 N.C. App. at 385 (quotation

omitted). While our appellate courts have a "clear preference for explicit findings" on willful noncompliance and present ability to pay, *Manning*, 262 N.C. App. at 389, a "general finding of present ability to comply . . . is [a] sufficient basis for the conclusion of wil[l]fulness necessary to support a judgment of civil contempt" if supported by competent evidence. *Hartsell*, 99 N.C. App. at 385.

Here, the trial court found that the Previous Orders remained in "full force and effect" as of the hearing date, and that their "purpose[s] . . . m[ight] still be served by compliance" with them. Further, the trial court documented Defendant's "knowledge" of and "stubborn resistance" to the requirements in the Third Order that she complete a 60-place job search, pay child support, and comply with Plaintiff's subpoena. *Mauney v. Mauney*, 268 N.C. 254, 257 (1966). The trial court also noted the tender of the check to Plaintiff's counsel "in full payment" of Defendant's child-support and attorneys' fees payments and how, "[o]n two separate occasions after months of no[n-]pay[ment] . . . , Defendant . . . c[a]me up with two large sums" for past-due payment. Additionally, FoF #18 confirms Defendant's distributive award of $31,000 from Plaintiff in their divorce settlement.

These supported findings show Defendant's past and present ability to comply with the Previous Orders and her willful refusal to do so prior to the hearing. In making these findings, the trial court properly considered the record evidence of Defendant's willful noncompliance. Thus, this Court affirms the ultimate facts of the Contempt Order.

### *2. Purge Conditions*

Defendant further argues that the trial court erred by imposing five purge conditions that "hold [her] in contempt indefinitely" because they are "impossible . . . to complete" and "depend on an impermissible, predetermined, baseless, future 'ability to comply.'" She asserts that "the very sentencing of a 30-day jail period of incarceration . . . show[s] a punitive purpose" appropriate to criminal, not civil, contempt. We disagree.

After finding a defendant in civil contempt, the trial court "must enter an order finding the facts constituting contempt and specifying the action which the contemnor must take to purge . . . herself of the contempt." N.C.G.S. § 5A-23 (2025). In setting purge conditions, a trial court must determine the "defendant's present ability to comply" with them and "clearly specify what [she] must do to purge [her]self of contempt." *Spears v. Spears*, 245 N.C. App. 260, 281–82 (2016). Purge conditions "cannot be vague such that it is impossible for the defendant to purge herself." *Watson*, 187 N.C. App. at 65 (brackets omitted).

Any party "found in civil contempt for failure to pay child support . . . may be imprisoned as long as the civil contempt continues without further hearing." N.C.G.S. § 5A-21(b). There is no statutory limit to the term of incarceration; a person "held in civil contempt . . . may stay imprisoned indefinitely until she meets the purge condition contained in the order." *Unger v. Unger*, 268 N.C. App. 142, 145 (2019) (emphasis omitted). "[T]he relief ordered is remedial and coercive (and thus civil in

character) if the contemnor's compliance with the contempt order will avoid the effect of any determinate sentence or fine." *Bishop v. Bishop*, 90 N.C. App. 499, 504 (1988) (adopting " 'character of relief' test" outlined in *Hicks ex. rel. Feiock v. Feiock*, 485 U.S. 624 (1988)).

Here, the Contempt Order is more properly characterized as civil contempt due to the purely "remedial and coercive" relief ordered. *Bishop*, 90 N.C. App. at 504. The Contempt Order detailed five specific purge conditions and suspended Defendant's 30-day sentence for 12 months to allow for her compliance. The conditions align with requirements from past Orders, while incarceration incentivizes Defendant's compliance during the suspension period. The suspension period also allows Defendant ample time to comply with the purge conditions, thus "avoid[ing] the effect of any determinate sentence or fine" by preventing incarceration altogether. *Id*. Thus, this Court affirms the Contempt Order.

### D. Attorneys' fees

Third, Defendant argues that the trial court failed to "make required findings" on both the "rendered legal services" of Plaintiff's counsel and Plaintiff's potential ability to "defray the cost of litigation." Thus, she asks this Court to vacate the trial court's award of attorneys' fees to Plaintiff under N.C.G.S. § 50-13.6. To award "reasonable" attorneys' fees to a party in a child-custody or support proceeding, the trial court must find that the party "(1) act[s] in good faith and (2) has insufficient means to defray the expense of the suit." *Burr v. Burr*, 153 N.C. App. 504, 506 (2002);

*see* N.C.G.S. § 50-13.6. The trial court's findings must "sufficient[ly]" support the award. *Burr*, 153 N.C. App. at 507. We review *de novo* whether the trial court met the statutory requirements to award attorneys' fees. *Hudson v. Hudson*, 299 N.C. 465, 472 (1980). If the trial court does so, "the amount . . . to be awarded rests within . . . [its] sound discretion." *Id.* Based on these considerations, we disagree with Defendant and affirm the trial court's award of attorneys' fees to Plaintiff.

### 1. *Nature and Scope of Services*

Defendant claims that the trial court failed to make findings on the "nature and scope of rendered legal services." To award attorneys' fees, the trial court "must make specific findings of fact relevant to . . . the attorney's skill," "hourly rate charged," and the "nature and extent of the legal services performed." *Cameron v. Cameron*, 94 N.C. App. 168, 172 (1989). Relevant considerations include "the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney." *Belcher v. Averette*, 152 N.C. App. 452, 457 (2002).

Here, the trial court documented the work experience of Plaintiff's counsel, as well as her current employment, "high regard in the legal community," and hourly rate "comparable" to similarly situated attorneys. Based on these findings, the trial court ordered Defendant to pay "reasonable" attorneys' fees of $6,500 for "additional counsel fees that Plaintiff has incurred to enforce compliance" with the three prior orders. The trial court entered its order "after reviewing the court file," which

included Plaintiff's counsel's affidavit of attorneys' fees containing a statement of itemized charges related to the "nature and extent" of her representation. *Id.* Thus, the trial court sufficiently addressed the nature and scope of legal services rendered to Plaintiff as a result of this litigation.

### 2. *Insufficient Means*

Defendant next contends that the trial court did not adequately determine Plaintiff's ability to "defray the cost of litigation." Here, the Contempt Order characterizes Plaintiff as "an interested party[ ] acting in good faith, . . . [who] is entitled to receive reimbursement from Defendant for the costs of this action, including his reasonable attorney[s'] fees." But the Contempt Order lacks any finding of Plaintiff's "insufficient means" to cover the costs of this action. Thus, this Court remands the award of attorneys' fees to the trial court for further factfinding on whether Plaintiff has the means to defray the costs of this action. On remand, we leave to the trial court's discretion whether to accept additional evidence and arguments.

### IV.   Conclusion

For the reasons discussed above, this Court (1) dismisses as void Defendant's purported stipulation to contempt, (2) affirms the trial court's adjudication of contempt, and (3) affirms the trial court's award of attorneys' fees, but (4) remands for further factfinding on Plaintiff's means to defray the cost of this action.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges CARPENTER and GRIFFIN concur.

Report per Rule 30(e).